1 | Michael G. Nardi, Esq. (SBN 126902)
2 | nardi@scmv.com
Andrea N. Myers, Esq. (SBN 259401)
3 | myers@scmv.com
4 | SELTZER CAPLAN MCMAHON VITEK
A Law Corporation
5 | 750 B Street, 2100 Symphony Towers
6 | San Diego, California 92101-8177
Telephone:  (619) 685-3003
7 | Facsimile:   (619) 685-3100
8 |
9 | Attorneys for Defendant
FEDERAL INSURANCE COMPANY
10 |

```
                           FILED
                   CLERK, U.S. DISTRICT COURT

                     AU G 2 9 2011

               CENTRAL DISTRICT OF CALIFORNIA
               BY                         DEPUTY
```

11 |
12 | **UNITED STATES DISTRICT COURT**
13 | **CENTRAL DISTRICT OF CALIFORNIA**

CV11-07123 DMG (VBK)

| | | |
|---|---|---|
| 14 | SCREEN ACTORS GUILD, Inc | )   CASE NO. |
| 15 | Plaintiff, | )   (LA Superior Court Case No. )   BC466014) |
| 16 | | ) |
| 17 | vs. | )   **NOTICE OF REMOVAL UNDER** )   **28 U.S.C. § 1441(b)** |
| 18 | FEDERAL INSURANCE COMPANY, | ) |
| 19 | and  DOES 1 through 10, inclusive, | )   Complaint Filed:   July 22, 2011 )   Trial Date:       None set |
| 20 | Defendants. | ) |
| 21 | | ) |
| 22 | | ) |

23 |                          <u>NOTICE OF REMOVAL</u>

24 |      **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

25 |      **PLEASE TAKE NOTICE** that Defendant Federal Insurance Company

26 | ("Federal") hereby removes to this Court the state court action described below,

27 | pursuant to 28 U.S.C § 1441 (b).

28 |

1

NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(b)                    Case No. _____

1.     On July 22, 2011, Plaintiff Screen Actors Guild ("Plaintiff") filed a complaint against Federal for Breach of Contract and Tortious Breach of the Covenant of Good Faith and Fair Dealing in the Superior Court of the State of California, in and for the County of Los Angeles. The action is entitled *Screen Actors Guild v. Federal Insurance Company*, Case No. BC466014, and it has been assigned to the Honorable Judge Ralph W. Dau ("the State Court Action").

2.     Plaintiff served Federal with a copy of the summons and complaint via personal service on July 29, 2011.  A true and correct copy of the complaint, the attached summons, and all of the papers served upon Federal in this action, are attached hereto as Exhibit A.

3.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Federal pursuant to 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.     Complete diversity of citizenship exists because Plaintiff alleges it is a corporation organized and existing under the laws of the State of California.  Plaintiff alleges Federal is a foreign corporation, with its principal address in New Jersey. Federal is, and was at the time of the filing of the State Court Action, an Indiana corporation, with its principal place of business in New Jersey.[1]  Thus, for purposes of diversity jurisdiction, Plaintiff is a citizen of California and Federal is a citizen of Indiana and New Jersey.

---

[1] Plaintiff correctly alleges Federal has its principal address in New Jersey, but it mistakenly contends that Federal is a corporation which is organized and existing under the laws of the state of New Jersey. Instead, Federal is an Indiana corporation. See Exhibit B, Indiana Secretary of State business entity record, available at https://secure.in.gov/sos/online_corps/view_details.aspx?guid=014363CE-E2F9-4D84-8D4A-3038A1130726, of which Federal requests this Court take judicial notice under Federal Rule of Evidence 201(b).

NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(b)                    Case No. _____

5.      The amount in controversy exceeds $75,000.00 because Plaintiff seeks damages for Federal's alleged denial of coverage and alleged wrongful failure to pay a loss in underlying litigation against Plaintiff in the amount of $330,000.00.   Plaintiff also seeks damages in an amount equal to unreimbursed costs allegedly incurred in defense of the underlying litigation.

6.      WHEREFORE, Federal requests that the above-entitled action now pending before the Superior Court of the State of California, County of Los Angeles, as Case Number BC466014, be removed to the United States District Court for the Central District of California for determination.


Dated: August 29, 2011          SELTZER CAPLAN McMAHON VITEK
                                A Law Corporation


                                By: _____
                                    Michael G. Nardi, Esq.
                                    Andrea N. Myers, Esq.
                                Attorneys for Defendant FEDERAL
                                INSURANCE COMPANY

NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(b)          Case No. _____

EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FEDERAL INSURANCE COMPANY and DOES 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SCREEN ACTORS GUILD, INC.

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 22 2011

John A. Clarke, Executive Officer/Clerk
BY _____ , Deputy
Mary Flores

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles County Superior Court - Central District<br>Stanley Mosk Courthouse on Hill St.<br>111 North Hill St.<br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>**BC 466014** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Steven Brower/Jason Goldstein        949-760-1121 Telephone 949-720-0182 Facsimile
BUCHALTER NEMER
18400 Von Karman Avenue, Suite 800
Irvine, California 92612

JOHN A. CLARKE, CLERK

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* | Clerk, by<br>*(Secretario)* Mary Flores | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Federal Insurance Company
   under: ☑ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 7/29/14

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com |

Code of Civil Procedure §§ 412.20, 465
Ex. A www.courtinfo.ca.gov

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE
Case Number _____

BC468014

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3©). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 | |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 | |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 | |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 | |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 | |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Barbara Scheper | 30 | 400 | Hon. David L. Minning | 61 | 632 | |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 | |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 | |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Willliam F. Fahey | 78 | 730 | |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | other | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | |

**\*Class Actions**
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S.Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the Outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____    JOHN A. CLARKE, Executive Officer/Clerk
                                                                          By_____, Deputy Clerk

LACIV CCH 190 (Rev. 04/10)            NOTICE OF CASE ASSIGNMENT –            Page 1 of 2
LASC Approved 05-06                    UNLIMITED CIVIL CASE                  Ex. A Page 2

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

LACIV CCH 190 (Rev. 04/10)
LASC Approved 05-06

**NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE**

Page 2 of 2

Ex. A Page 3

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:
- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):
- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:
- **Mediation**
- **Settlement Conference**

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk. | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (**Civil only**).

**What Is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate**
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate**
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate**
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate**
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate**
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate**
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

Page 1 of 2

Ex. A Page 5

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: *State Bar number, and address*: | FOR COURT USE ONLY |
|---|---|
| Steven Brower (SBN: 93568), Jason Goldstein (SBN: 207481)<br>BUCHALTER NEMER<br>18400 Von Karman Avenue, Suite 800<br>Irvine, California 92612 | CONFORMED COPY<br>ORIGINAL FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>JUL 22 2011<br><br>John A. Clarke, Executive Officer/Clerk<br>BY _____ , Deputy<br>Mary Flores |
| TELEPHONE NO.: 949-760-1121     FAX NO.: 949-720-0182 | |
| ATTORNEY FOR (*Name*): Plaintiff SCREEN ACTORS GUILD, INC. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE

CASE NAME: SCREEN ACTORS GUILD, INC. vs. FEDERAL INSURANCE
COMPANY AND DOES 1 through 10, inclusive,

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: BC 466014 |
|---|---|---|
| ☒ Unlimited   ☐ Limited<br>(Amount        (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter   ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☒ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (*not specified above*) (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial post judgment judicial supervision

3. Remedies sought (*check all that apply*): a. ☒ monetary  b. ☐ nonmonetary; declaratory or injunctive relief    c. ☐ punitive

4. Number of causes of action (*specify*): 2

5. This case ☐ is ☒ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: July 22, 2011

Steven Brower
_____         ► _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**                    Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

| SHORT TITLE:<br>SCREEN ACTORS GUILD, INC. vs. FEDERAL INSURANCE COMPANY | CASE NUMBER<br>BC 466014 |
| --- | --- |

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☒ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL   2   ☐ HOURS/ ☒ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- |
| **Auto Tort** — Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** — Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4


American LegalNet, Inc.<br>www.FormsWorkFlow.com

SHORT TITLE:
SCREEN ACTORS GUILD, INC. vs. FEDERAL INSURANCE COMPANY

CASE NUMBER

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☒ A6015  Insurance Coverage (not complex) | 1., ②, 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4


American LegalNet, Inc.
www.FormsWorkFlow.com

| SHORT TITLE: SCREEN ACTORS GUILD, INC. vs. FEDERAL INSURANCE COMPANY | NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ/Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

American LegalNet, Inc.
www.FormsWorkFlow.com



| SHORT TITLE: SCREEN ACTORS GUILD, INC. vs. FEDERAL INSURANCE COMPANY | ⌐ ᴅ NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 5757 Wilshire Blvd., 7th Floor |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90036-3600 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _____Stanley Mosk_____ courthouse in the _____Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: July 22, 2011 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)
Steven Brower

## PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4

American LegalNet, Inc.
www.USCourtForms.com

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| **TELEPHONE NO.:**  **FAX NO.** (Optional): | | |
| **E-MAIL ADDRESS** (Optional): | | |
| **ATTORNEY FOR** (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1.  The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

    a.  Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b.  Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c.  Exchange of names and contact information of witnesses;

    d.  Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e.  Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f.  Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g.  Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

   (INSERT DATE)                      (INSERT DATE)

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

---

LACIV 036 (new)
LASC Approved 04/11          **STIPULATION – DISCOVERY RESOLUTION**          Ex. A Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

## The following parties stipulate:

Date: _____

➢ _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR PLAINTIFF)

Date: _____

➢ _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR _____ )

Date: _____

➢ _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR _____ )

Date: _____

➢ _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:     FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR PLAINTIFF)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____         _____
                                        JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| **TELEPHONE NO.:**<br>**E-MAIL ADDRESS (Optional):**<br>**ATTORNEY FOR (Name):** FAX NO. (Optional): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, _briefly_ describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, _briefly_ describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

1  **BUCHALTER NEMER**
STEVEN BROWER (SBN: 93568)
2  E-mail: sbrower@buchalter.com
JASON GOLDSTEIN (SBN: 207481)
3  18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
4  Telephone: (949) 760-1121
Facsimile: (949) 720-0182
5

6  Attorneys for Plaintiff SCREEN ACTORS GUILD,
INC.
7

CONFORMED COPY
SUPERIOR ORIGINAL FILED
COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 22 2011

John A. Clarke, Executive Officer/Clerk
BY _____ 
Mary Elused     Deputy

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF LOS ANGELES**

10

11  SCREEN ACTORS GUILD, INC.,          CASE NO: BC 466014

12            Plaintiff,

13      vs.                             COMPLAINT FOR:
                                        1) BREACH OF CONTRACT;
14  FEDERAL INSURANCE COMPANY           2) TORTIOUS BREACH OF THE
    and DOES 1 through 10, inclusive,      COVENANT OF GOOD FAITH
15                                         AND FAIR DEALING
            Defendants.
16

17              **GENERAL ALLEGATIONS**

18      1.     Plaintiff Screen Actors Guild, Inc. ("SAG") is a corporation organized

19  and existing under the laws of the state of California.

20      2.     Plaintiff is informed and believes that defendant Federal Insurance

21  Company ("Federal") is a corporation which is organized and existing under the

22  laws of the state of New Jersey.  Federal has qualified to do business in the State of

23  California with a principal address in New Jersey.

24      3.     Does 1 through 10 are other entities which are owned by or otherwise

25  related to Federal and which had some responsibility for the acts or omissions

26  alleged by Plaintiff.  Plaintiff is not presently aware of the identities of such persons

27  and entities and will therefore amend this Complaint to assert their identity when it

28  becomes known to Plaintiff.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1                                1

                                        **COMPLAINT**

4.      Federal issued to SAG a policy of insurance, for the policy period of March 1, 2007 to March 1, 2008, Policy Number 6802-1737 ("Federal Policy"). As a matter of description only, and without waiver or limitation, SAG would refer to the policy as being one which included coverage for Entity Liability Coverage on a claims-made basis. A copy of the policy is attached hereto as Exhibit "A" and is incorporated herein by reference as though set forth in full.

5.      On or about September 18, 2007, SAG was sued by Ken Osmond, both individually and ostensibly on behalf of those similarly situated. The case was filed in Los Angeles Superior Court as Case No. BC 377780 ("Osmond Case").

6.      On or about October 14, 2007 the Osmond Case was timely tendered to Federal, by SAG, seeking coverage under the Federal Policy.

7.      SAG properly complied with the duty to cooperate with Federal by providing responses to requests for information and, in all other respects, also complied with its legal obligations under the Federal Policy.

8.      By letter dated January 23, 2008, Federal acknowledged a duty to defend the action. By email dated February 1, 2008, SAG noted that the "Factual Background" portion of the January 23 letter was based on the pleadings and SAG reserved the right to disagree with the plaintiff's characterization of both the facts and the law. Therefore, SAG reserved "all rights under both the policy and under the applicable law, both as to the extent of the duty to defend and the duty to indemnify."

9.      Federal consented to SAG's selection of Latham & Watkins ("Latham") as defense counsel in the Osmond Case, subject to specified reduced hourly rates and subject to the retention (deductible) specified in the Federal Policy.

10.     From time to time SAG received invoices from Latham and paid those bills and thereafter submitted copies of the bills to Federal for reimbursement. SAG is informed and believes that Federal submitted those billings to a formal audit process which took into consideration not only the agreed hourly rate, and the

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1

2

COMPLAINT

Ex. A Page 21

1   retention amounts, but also additional factors sometimes referred to as "Panel

2   Counsel" rules which are not properly applied to the Latham bills.  As a result,

3   certain additional amounts are due and owing to SAG from Federal.

4     11. On or about September 3, 2010 SAG provided a draft settlement

5   agreement to Federal for review and approval pursuant to the "No Action" clause.

6   On that same date Federal stated "Without waiver of our previously stated position

7   on coverage, Federal Ins. Co. does not object to the proposed settlement agreement

8   between Osmond and SAG."

9     12. On March 2, 2011, after holding the appropriate hearings and making

10   the appropriate findings, Judge Carl West entered a "Judgment and Order Granting

11   Final Approval of Class Action Settlement."  The only monetary relief included

12   therein was an award of $315,000 as attorneys' fees for class counsel and a

13   payment of $15,000 to plaintiff Osmond as an "enhancement payment" for his

14   services in prosecution of the class action ("$330,000 Loss").

15     13. On March 31, 2011 SAG formally tendered the Judgment and

16   documents related thereto and requested that Federal reimburse SAG for the

17   $330,000 Loss, which SAG has already paid as required by the Judgment, pursuant

18   to the terms of the Federal Policy.  SAG, in an effort to avoid the cost of litigation

19   (without waiver of the right to make any other legal or factual assertion) provided

20   some of its reasoning to Federal, as follows:

21      First, pursuant to the Order of the court, there is no admission of

22     liability, fault or wrongdoing by SAG.  (Order, Page 3, lines 15-18).

23      Second, there are no provisions requiring that SAG pay money to

24     class members, other than Foreign Levy Funds which are already due and

25     owing to the members in the course of the normal handling of those Foreign

26     Levy Funds.

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1    3

COMPLAINT

Ex. A Page 22

1    Third, to the extent that SAG is agreeing to incur additional costs, in

2    the future, for audits and other non-monetary provisions of the settlement,

3    SAG is not seeking reimbursement for those sums.

4    A summary of the allegations which were made against SAG is

5    contained in the Class Settlement Agreement (Page 5, lines 6-9), which

6    says:

7    In this Action, Plaintiff alleges, in essence, that SAG

8    has collected substantial amounts, and earned interest thereon,

9    of Foreign Levy Funds without authorization.   SAG has

10   denied, and continues to deny, each and every claim and

11   contention in the Action.

12   For the purposes of our discussion the most directly relevant portions

13   are found on Page 3 and Page 4 of the Order, where the Court says that

14   "Class counsel is entitled to an award of fees and costs in the amount of

15   $315,000" and "Class Representative Ken Osmond is entitled to an

16   enhancement payment of $15,000."

17   As more fully set forth below, SAG would contend that the sum of

18   $330,000 ($315,000 plus $15,000) is due and owing under the terms of the

19   policy.

20   We would first direct your attention to the "Directors & Officers

21   Liability and Entity Liability Coverage Section" which includes Entity

22   Liability Coverage:

23   The Company shall pay, on behalf of the **Organization, Loss** which

24   the **Organization** becomes legally obligated to pay on account of any

25   **Claim** first made against the **Organization** during the **Policy Period** . . . for

26   a **Wrongful Act** . . . allegedly committed or attempted by the **Organization**

27   . . . before or during the **Policy Period**, but only if such **Claim** is reported to

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1

4

**COMPLAINT**

Ex. A Page 23

1    the Company in writing in the manner and within the time provided in

2    Subsection 6 of the General Terms and Conditions.

3        Under the terms of this particular coverage part, the definition of a

4    Claim includes "a written demand for monetary damages or non-monetary

5    relief." In other words, no claim for covered monetary damages is required.

6    The request for non-monetary relief is sufficient to constitute a Claim. This

7    is further confirmed by the fact that any "civil proceeding commenced by

8    the service of a complaint" (which occurred here) also constitutes a claim.

9        And the definition of Wrongful Act also is written broadly to

10   encompass the allegations found here. The definition includes "any error,

11   misstatement, misleading statement, act, omission, neglect, breach of duty,

12   **Personal Injury Wrongful Act** or **Publisher Wrongful Act** committed,

13   attempted, or allegedly committed or attempted . . . by the **Organization**."

14       So there is no real dispute about whether this was a Claim for a

15   Wrongful Act (even though, from SAG's perspective, it was a false claim).

16   Rather, the only remaining determination is whether the amounts being

17   sought here constitute a **Loss** and, then, whether there is any Exclusion

18   which would bar coverage.

19       Loss is, consistent with the spirit of this coverage part, defined very

20   broadly as "Loss means the amount that any Insured becomes legally

21   obligated to pay on account of any covered Claim, including but not limited

22   to: . . . (ii) judgments; (iii) settlements; . . ."

23       As you know, in Class Actions, the amount of the Class Counsel Fee,

24   and any enhancement or incentive payment, is usually determined by the

25   Court, and not by the Settlement Agreement. But, whether you refer to the

26   $330,000 as being the result of a settlement or a judgment, it is still squarely

27   within the definition of Loss under the Policy as being an amount which

28   SAG is legally obligated to pay as a result of a covered Claim. The next

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1                                5

**COMPLAINT**

Ex. A Page 24

1    consideration is whether any of the specific exceptions to the definition of
2    Loss apply.
3        Exception (a) doesn't apply because SAG is obligated to pay the
4    funds.
5        Exception (b) is not applicable because SAG is not seeking
6    reimbursement for the costs (auditors, etc.) to comply with the order for
7    non-monetary relief. And the Class Counsel fee and enhancement fees are
8    not costs of compliance.
9        Exception (c) is not applicable because there are not pre-claim
10   amounts at issue.
11       Exception (d) is not applicable because this is not a tax, fine, penalty
12   or multiplied damages award.
13       Exception (e) is not applicable because there is no statutory provision
14   making such amounts uninsurable.
15       Exception (f) is not applicable because the claim, as described in the
16   Settlement, was not seeking any uncovered damages, so allocation does not
17   apply.
18       Exception (g) is not applicable because the amounts sought do not
19   relate to the purchase of securities.
20       The remaining question is whether there are any exclusions which
21   apply to the Class Counsel Fees and the incentive award. Neither the
22   general exclusions in Section 5, nor the Clause 3 exclusions in Section 6,
23   have any applicability to the circumstance here.
24       In this discussion we have considered the Endorsements to the Policy
25   and do not believe that there are any relevant modifications.
26       14.    On or about June 20, 2011 Federal indicated that it would not agree to
27   pay the $330,000 Loss to SAG. One of the principal grounds cited by Federal is
28   Exclusion 5(j) of the Federal Policy which indicates that:

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1                                    6

5.     The Company shall not be liable for Loss on account of any Claim:

   . . .     (j)     made against any Insured based upon, arising from, or in consequence of:

      . . .     (ii)     such Insured having gained in fact any profit, remuneration or advantage to which such Insured was not legally entitled;

15.     The Settlement Agreement in the Osmond Case specifically provided that SAG was not admitting any liability and neither the Settlement Agreement, nor the Judgment, obligated SAG to make any restitution or reimbursement to any party.

16.     Federal has previously litigated the significance of its "Illegal Personal Profit Exclusion" which uses almost the same language as Exclusion 5(j).  The court, in *Federal Insurance v. Cintas* (SD Ohio 2006) 1:04-CV-00697 said:

   . . . Federal argues that it is not required to indemnify [its insured] for all loss resulting from Count 1 because of the Policy's Illegal Personal Profit Exclusion (hereinafter the "Exclusion"). The Exclusion reads: "[Federal] shall not be liable for Loss on account of any Claim made against any Insured: (h) based upon, arising from, or in consequence of such Insured having gained in fact any personal profit, remuneration or advantage to which such Insured was not legally entitled . . ." (doc. 47). Federal notes, and the Court agrees, that the [] plaintiffs seek "restitution and disgorgement of all benefits" [the insured] obtained as a result of its alleged misconduct (Id.). But, as noted by [the insured], it has not been established in either the [underlying] Action or the instant action that [the insured] ever obtained a personal profit and that any such personal profit was illegal.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1

7

**COMPLAINT**

Ex. A Page 26

1    Federal cites *TIG Speciality Ins. Co. v. Pinkmonkey.com, Inc.*,

2    375 F.3d 365 (5th Cir. 2004) in support of its argument that the

3    Exclusion should preclude it from providing indemnification. The *TIG*

4    court did find that a personal profit exclusion precluded coverage for

5    judgments and settlements against the insureds who profited by

6    violating securities laws. *TIG* at 372-73. <u>Federal's reliance on *TIG* is</u>

7    <u>misplaced</u>. One must recognize that in *TIG* the insurer filed its

8    declaratory judgment action after the underlying securities case was

9    litigated and a jury had determined that the insured had, in fact,

10   personally benefitted from his securities violations. Id at 370. In the

11   matter before the Court, there has been no finding yet that [the insured]

12   obtained a personal benefit to which it was not entitled.

13    [The insured] highlights *St. Paul Mercury Ins. Co. v. Foster,* 268

14   F. Supp. 2d 1035 (C.D. Ill. 2003), for the proposition that mere

15   allegations do not provide a basis for applying the Exclusion (doc. 52).

16   The *St. Paul* court stated: "With all due respect, St. Paul's position is

17   untenable and ignores the nature of the claims asserted in the *Keach*

18   case. The very language of the exclusion is premised upon an "Insured

19   gaining ***in fact*** any personal profit . . . to which such Insured was not

20   legally entitled . . ." (Emphasis added). St. Paul's interpretation renders

21   the "in fact" language superfluous, which is contrary to the principles

22   of construction directing courts to give meaning to all policy

23   provisions and avoid interpretations that render any part of the contract

24   superfluous. As the selling shareholders in this case could receive

25   personal profits and be legally entitled to retain them so long as

26   adequate consideration was given in return, and that issue remains to

27   be determined at trial in the underlying litigation, it is clear that any

28   determination as to whether an insured in this case gained personal

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1

8

**COMPLAINT**

Ex. A Page 27

1   profit in fact must await resolution of the underlying litigation." St.

2   Paul at 1045. As no factual or legal basis currently exists for applying

3   the Exclusion, Federal is not entitled to a declaration that the

4   Exclusion precludes its duty to indemnify [its insured] as to Count 1 of

5   the [underlying] Action. If it is determined that [the insured] did *in fact*

6   obtain personal profit to which it was not entitled, then Federal having

7   properly reserved its rights, may renew its motion on this issue.

8   So Federal has known, since at least 2006, an exclusion such as Exclusion 5(j)

9   applies only when there has been an actual judicial determination of wrongful

10  profit, not a mere allegation.

11                          **FIRST CLAIM FOR RELIEF**

12                          **BREACH OF CONTRACT**

13      17.   Plaintiff realleges and incorporates herein by reference, as though set

14  forth in full, paragraphs 1 through 14 of this Complaint.

15      18.   SAG has fully performed its obligations under the Federal Policy.

16      19.   On or about June 20, 2011, and thereafter, Federal breached the

17  Federal Policy by failing and refusing, and continuing to fail and refuse, to pay the

18  $330,000 Loss to SAG.

19      20.   Within the past four years SAG has been further damaged in the

20  amount of unreimbursed defense costs which were improperly not reimbursed by

21  Federal, the exact amount of which damages are subject to proof.

22                          **SECOND CLAIM FOR RELIEF**

23                          **BREACH OF THE COVENANT**

24                          **OF GOOD FAITH AND FAIR DEALING**

25      21.   Plaintiff realleges and incorporates herein by reference, as though set

26  forth in full, paragraphs 1 through 16 of this Complaint.

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1

9

**COMPLAINT**

Ex. A Page 28

22.    Federal was obligated to ensure that all communications and conduct between Plaintiff and Federal were undertaken in good faith and in a manner intended to fulfill the object of the Federal Policy.

23.    Federal's denial of coverage and resulting refusal to reimburse SAG for the $330,000 Loss was unreasonable or, in the alternative, was undertaken without good cause, and thereby constitutes a tortious breach of the covenant of good faith and fair dealing.

24.    As a result of the various breaches by Federal, SAG has incurred substantial financial obligations in order to pay the $330,000 Loss, plus certain defense costs, which items of Loss and/or Defense Costs are properly covered under the Federal Policy, without having obtained the benefit of receiving timely reimbursement from Federal.

25.    As a further proximate result of the breaches by Federal, SAG has been required to retain coverage counsel and to expend attorney's fees and costs in the filing and pursuit of this action in order to obtain the insurance benefits to which it was entitled under the Federal Policy.  Pursuant to the principles of *Brandt v. Superior Court,* Plaintiff is entitled to damages in the sum of all such amounts, including attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment as follows:

ON THE FIRST Claim for Relief:

1.    For damages in the amount of $330,000, plus additional sums which are due for unreimbursed costs of defense.

2.    For interest on sums which were not timely paid to Plaintiff.

3.    For all other damages incurred by Plaintiff as a result of any breach of contract.

ON THE SECOND Claim for Relief:

4.    For damages in the amount of $330,000, plus additional sums which are due for unreimbursed costs of defense.

5.     For attorney's fees and costs incurred in this matter.

ON ALL Causes of Action:

6.     For interest on all sums where properly owed.

7.     For costs of suit incurred herein.

For such other and further relief as the Court may deem just.

DATED: July 22, 2011                    BUCHALTER NEMER
                                        A Professional Corporation


                                        By:_____
                                              STEVEN BROWER
                                           Attorneys for Plaintiff SCREEN
                                           ACTORS GUILD, INC.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 9523908v1                            11
                                   COMPLAINT
                                                              Ex. A Page 30



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

CHUBB

*ForeFront Portfolio*<sup>SM</sup>
*For Not-for-Profit Organizations*
*General Terms and Conditions Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated
under the laws of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

Policy Number: 6802-1737

THE DIRECTORS AND OFFICERS LIABILITY AND ENTITY LIABILITY, FIDUCIARY LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR DURING AN APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED UNLESS OTHERWISE PROVIDED HEREIN, BY "DEFENSE COSTS," AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY. READ THE ENTIRE POLICY CAREFULLY.

**Item 1.**  **Organization:**          Screen Actors Guild, Inc.and its Subsidiaries

       Principal Address:        5757 Wilshire Boulevard
                      Los Angeles, CA 90036

**Item 2.**  **Policy Period:**  (A)  From:   12:01 A.M. on   March 1, 2007
              (B)  To:    12:01 A.M. on   March 1, 2008
                  Local time at the address shown in Item 1.

**Item 3.**  **A Combined Maximum Aggregate Limit of Liability is applicable:**

      ☐ Yes ☒ No   The Combined Maximum Aggregate Limit of Liability for all **Claims** under
             all **Liability Coverage Sections** each **Policy Year** shall be: $N/A

**Item 4.**  **Coverage is available for the following only:**

      ☒ Yes ☐ No   Directors & Officers Liability and Entity Liability Coverage Section

      ☒ Yes ☐ No   Employment Practices Liability Coverage Section

      ☐ Yes ☒ No   Fiduciary Liability Coverage Section

      ☐ Yes ☒ No   Crime Non-Liability Coverage Section

      ☐ Yes ☒ No   Kidnap/Ransom and Extortion Non-Liability Coverage Section

**ForeFront Portfolio**<sup>SM</sup>
**For Not-for-Profit Organizations**
*General Terms and Conditions Section*

Item 5.   **Extended Reporting Period:**

(A) Additional Period:              (B) Additional Premium:

1 year                                        150% of Annual Premium

Item 6.   Termination of prior policies: 6802-1737 (Mar 1, 2006 – Mar 1, 2007)

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____
Secretary

_____
President

03/01/2007
_____
Date

_____
Authorized Representative


**CHUBB**

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:

### *Territory*

1.  Coverage shall extend anywhere in the world.

### *Terms and Conditions*

2.  Except for these General Terms and Conditions or as specifically provided in any Coverage Section of this Policy, the terms and conditions of each Coverage Section shall apply only to that Coverage Section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Section, the terms and conditions of such Coverage Section shall control for purposes of that Coverage Section. Any defined term referenced in these General Terms and Conditions but defined in a Coverage Section shall, for purposes of coverage under that Coverage Section, have the meaning set forth in that Coverage Section.

### *Definitions*

3.  When used in this Policy, unless stated to the contrary in any Coverage Section of this Policy:

    **Affiliate** means any entity other than a **Subsidiary**, during such time as the **Organization** has the authority to direct the financial or managerial decision making of such entity, whether by operation of law, pursuant to contract or agreement, by means of stock ownership or membership, or pursuant to such entity's charter, articles of incorporation, or by-law provisions.

    **Anniversary Date** means that date and time exactly one (1) year after the date and time set forth in Item 2(A) of the Declarations of these General Terms and Conditions, and each succeeding date and time exactly one (1) year after the previous **Anniversary Date**.

    **Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this Policy or for any policy of which this Policy is a direct or indirect renewal or replacement. **Application** shall also include all other information or materials provided by the **Insureds** to the Company in connection with the underwriting or issuance of this Policy, including quarterly and annual reports, financial statements, and all other filings or submissions to or with any government or regulatory agency, whether provided to the Company directly or indirectly through the use of public databases or similar sources. All such applications, attachments, materials and other information are deemed attached to, incorporated into and made a part of this Policy.

    **Claim** shall have the meaning set forth in the applicable **Liability Coverage Section**.

    **Coverage Event** means the event or loss which must occur or be sustained or discovered in order to invoke coverage under the applicable **Non-Liability Coverage Section**.

    **Defense Costs** shall have the meaning set forth in the applicable Coverage Section.

    **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

Ex. A Page 34

**Employment Claim** shall have the meaning set forth in the applicable Coverage Section.

**Financial Impairment** means the status of an **Organization** resulting from:

(a)     the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization;** or

(b)     such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Insured** shall have the meaning set forth in the applicable Coverage Section.

**Insured Capacity** means the position or capacity of an **Insured Person** that causes him or her to meet the definition of **Insured Person** set forth in the applicable Coverage Section. **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization.

**Insured Person** shall have the meaning set forth in the applicable Coverage Section.

**Loss** shall have the meaning set forth in the applicable Coverage Section.

**Liability Coverage Section** means the Directors & Officers Liability and Entity Liability, Employment Practices Liability, and Fiduciary Liability Coverage Sections of this Policy, if purchased as set forth in Item 4 of the Declarations of these General Terms and Conditions.

**Manager** means any natural person who has been, now is or shall be appointed a manager, member of the Board of Managers or equivalent executive of an **Organization** that is a limited liability company.

**Non-Liability Coverage Section** means the Crime and Kidnap/Ransom and Extortion Coverage Sections of this Policy, if purchased as set forth in Item 4 of the Declarations of these General Terms and Conditions.

**Organization** means, collectively, those organizations designated in Item 1 of the Declarations of these General Terms and Conditions except as otherwise provided in any Coverage Section, including any such organization in its capacity as a debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

**Policy Period** means the period of time set forth in Item 2 of the Declarations of these General Terms and Conditions, subject to any prior termination in accordance with Subsection 17 of these General Terms and Conditions.

**Policy Year** means the period, within the **Policy Period**, from the date and time set forth in Item 2(A) of the Declarations of these General Terms and Conditions to the first **Anniversary Date**, or the period, within the **Policy Period**, from an **Anniversary Date** to its next succeeding **Anniversary Date**, subject to any prior termination in accordance with Subsection 17 of these General Terms and Conditions.

**Pollutants** means:

14-02-10190 (Ed. 11/2004)                    Page 4 of 12



(a)   any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof, including, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, or

(b)   any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, or any noise.

**Potential Employment Claim** shall have the meaning set forth in the applicable Coverage Section.

**Potential Third Party Claim** shall have the meaning set forth in the applicable Coverage Section.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Subsidiary** means, subject to the provisions of Subsections 9, 10 and 11 of these General Terms and Conditions:

(a)   any not-for-profit entity during any time in which the **Organization** owns or controls, directly or through one or more **Subsidiaries**, the present right to elect or appoint more than fifty percent (50%) of such entity's directors or trustees; or

(b)   any not-for-profit limited liability company during any time in which the **Organization** owns or controls, directly or through one or more **Subsidiaries**, the present right to elect, appoint or designate more than fifty percent (50%) of such entity's **Managers**.

**Third Party Claim** shall have the meaning set forth in the applicable Coverage Section.

**Wrongful Act** shall have the meaning set forth in each applicable **Liability Coverage Section**.

---

### Extended Reporting Period

4.   (a)   If any **Liability Coverage Section** is either terminated or not renewed for any reason other than nonpayment of premium, any **Insured** shall have the right to purchase an Extended Reporting Period for the period set forth in Item 5(A) of the Declarations of these General Terms and Conditions. This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the additional applicable premium due as set forth in Item 5(B) of the Declarations of these General Terms and Conditions, is received by the Company within thirty (30) days after the end of the **Policy Period**.

(b)   If the Extended Reporting Period is purchased, then coverage otherwise afforded by such **Liability Coverage Section** will be extended to apply to **Loss** from **Claims** first made during such Extended Reporting Period but only for **Wrongful Acts** committed or allegedly committed before the end of the **Policy Period** or the date of any conversion of coverage described in Subsection 9, 10 or 11 of these General Terms and Conditions, whichever is earlier. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period. The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the **Policy Year** immediately preceding the expiration of the **Policy Period**.

### Limits of Liability

5.   (a)   Solely with respect to all **Liability Coverage Sections**:

(i) If the Combined Maximum Aggregate Limit of Liability for all **Liability Coverage Sections** is elected, as set forth in Item 3 of the Declarations of these General Terms and Conditions, such amount shall be the maximum aggregate liability of the Company for all **Loss** from all **Claims** first made during each **Policy Year** under all **Liability Coverage Sections** combined, regardless of the number of **Claims**; provided that the maximum aggregate liability of the Company for all **Loss** from all **Claims** first made during each **Policy Year** under each Liability Coverage Section shall not exceed the respective Limit of Liability as set forth in Item 2 of the Declarations of each applicable **Liability Coverage Section**. If the Limit(s) of Liability of any **Liability Coverage Section**, as set forth in Item 2 of the Declarations for such **Liability Coverage Section**, is less than the Combined Maximum Aggregate Limit of Liability for all **Liability Coverage Sections** as set forth in Item 3 of the Declarations of these General Terms and Conditions, such lesser limit shall be a sublimit and such amount shall be part of, and not in addition to, the Combined Maximum Aggregate Limit of Liability for all **Liability Coverage Sections** as set forth in Item 3 of the Declarations of these General Terms and Conditions.

(ii) If the Combined Maximum Aggregate Limit of Liability for all **Liability Coverage Sections** is not elected, the maximum aggregate liability of the Company for all **Loss** from all **Claims** first made during each **Policy Year** under each **Liability Coverage Section** shall be the respective Limit of Liability as set forth in Item 2 of the Declarations for such **Liability Coverage Section**, regardless of the number of **Claims**.

(iii) Except as otherwise expressly provided in any **Liability Coverage Section**, **Defense Costs** are part of and not in addition to the applicable Limits of Liability set forth in Item 2 of the Declarations of the applicable **Liability Coverage Section**, and the payment by the Company of **Defense Costs** shall reduce and may exhaust such applicable Limits of Liability.

(b) Solely with respect to each **Non-Liability Coverage Section**, the Company's maximum liability shall be the respective Limit(s) of Liability set forth in the Declarations of such **Non-Liability Coverage Section**.

---

**Reporting and Notice**

6. (a) The **Insureds** shall, as a condition precedent to exercising any right to coverage under any **Liability Coverage Section**, give to the Company written notice of any **Claim** as soon as practicable, but:

(i) if such **Liability Coverage Section** expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased with respect to such **Liability Coverage Section**, no later than the sixtieth (60th) day after the effective date of expiration or termination; or

(ii) if an Extended Reporting Period is purchased with respect to such **Liability Coverage Section**, no later than the last day of the Extended Reporting Period.

(b) Solely with respect to the Directors & Officers Liability and Entity Liability Coverage Section and the Fiduciary Liability Coverage Section, if:



**ForeFront Portfolio**$^{SM}$
**For Not-for-Profit Organizations**
General Terms and Conditions Section

(i)   an **Insured** becomes aware of circumstances during the **Policy Period** which could give rise to a **Claim** and gives written notice of such circumstances to the Company as soon as practicable during the **Policy Period**, or

(ii)   an **Insured** receives during the **Policy Period** a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company as soon as practicable during the **Policy Period**,

then any **Claim** subsequently arising from such circumstances referred to in (i) above, or from the **Wrongful Acts** referred to in (ii) above shall be deemed to have been first made against the **Insured** during the **Policy Year** in which the written notice described in (i) or (ii) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as set forth in Subsection 6(a) above.  With respect to any such subsequent **Claim**, no coverage under the Directors & Officers Liability and Entity Liability Coverage Section or the Fiduciary Liability Coverage Section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(c)   Solely with respect to the Employment Practices Liability Coverage Section, if during the **Policy Period** any **Insured**:

(i)   becomes aware of a **Potential Employment Claim** or **Potential Third Party Claim** and gives written notice of such **Potential Employment Claim** or **Potential Third Party Claim** to the Company as soon as practicable during the **Policy Period**; and

(ii)   requests coverage under the Employment Practices Liability Coverage Section for any **Employment Claim** or **Third Party Claim** subsequently resulting from such **Potential Employment Claim** or **Potential Third Party Claim**;

then any **Employment Claim** or **Third Party Claim** subsequently arising from such **Potential Employment Claim** or **Potential Third Party Claim** referred to in (i) above shall be deemed to have been first made against the **Insured** during the **Policy Year** in which the written notice described in (i) and (ii) above was first given by an **Insured** to the Company, provided any such subsequent **Employment Claim** or **Third Party Claim** is reported to the Company as set forth in Subsection 6(a) above.  With respect to any such **Employment Claim** or **Third Party Claim**, no coverage under the Employment Practices Liability Coverage Section shall apply to loss incurred prior to the date such subsequent **Employment Claim** or **Third Party Claim** is actually made.

(d)   Solely with respect to any **Non-Liability Coverage Section**, the **Insureds** shall give notice of a **Coverage Event** in accordance with the applicable Proof of Loss and Legal Proceedings Subsection of such Coverage Section.

(e)   The **Insureds** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company such information, assistance, and cooperation as the Company may reasonably require, and shall include in any notice under Subsection 6(a), (b) or (c) above a description of the **Claim, Potential Employment Claim, Potential Third Party Claim** or circumstances, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim, Potential Employment Claim, Potential Third Party Claim** or circumstances.

**Spouses, Estates and Legal Representatives**

Ex. A Page 38

*ForeFront Portfolio$^{SM}$*
*For Not-for-Profit Organizations*
*General Terms and Conditions Section*

7.  Subject to all limitations, conditions, provisions and other terms of these General Terms and Conditions and of the applicable **Liability Coverage Section**, coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:

    (a)  the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is incompetent, insolvent or bankrupt; or

    (b) .  the lawful spouse or **Domestic Partner** of such **Insured Person** solely by reason of such spouse's or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse's or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

    All provisions of these General Terms and Conditions and of the applicable **Liability Coverage Section**, including without limitation the Retention, that are applicable to **Loss** incurred by the **Insured Person** shall also apply to loss incurred by the estate, heirs, legal representatives, assigns, spouse and/or **Domestic Partner** of such **Insured Person**. The coverage provided by this Subsection 7 shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

***Notice***

8.  Any notice to the Company with respect to any Coverage Section shall designate the Coverage Section under which notice is being given and shall be treated as notice only under the Coverage Section(s) so designated.

    Notice to the Company of a **Claim**, **Potential Employment Claim** or **Potential Third Party Claim** or of circumstances which could give rise to a **Claim** under any **Liability Coverage Section** or of a **Coverage Event** under any **Non-Liability Coverage Section**, shall be given in writing addressed to:

    > Attn: Claims Department
    > Chubb Group of Insurance Companies
    > 15 Mountain View Road
    > Warren, New Jersey 07059

    All other notices to the Company shall be given in writing addressed to:

    > Attn: Chubb Specialty Insurance Underwriting
    > Chubb Group of Insurance Companies
    > 15 Mountain View Road
    > Warren, New Jersey 07059

    Any such notice shall be effective on the date of receipt by the Company at such address.

***Changes in Exposure***

9.  *Acquisition /Creation of Another Organization*

    (a)  If before or during the **Policy Period** any **Organization**:

        (i)  acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

14-02-10190 (Ed. 11/2004)          Page 8 of 12



(ii)    acquires another organization by merger into or consolidation with the **Organization** such that the **Organization** is the surviving entity,

then coverage shall be provided for such other organization, and its **Insureds**, with respect to any:

(1)    **Liability Coverage Section**: solely for **Wrongful Acts** committed, attempted, or allegedly committed or attempted after the effective date of such acquisition or creation unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by such **Insureds** before such acquisition or creation; or

(2)    **Non-Liability Coverage Section**: after the effective date of such event, pursuant to the Liability for Prior Losses Subsection of such **Non-Liability Coverage Section**.

(b)    If, at the time of an acquisition or creation described in paragraph 9(a) above,

(i)    the total assets of any such acquired or created organization exceed twenty-five percent (25%) of the total assets of the **Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Organization**, respectively, as of the date of such acquisition or creation); or

(ii)    solely with respect to the Employment Practices Liability Coverage Section, if purchased as set forth in Item 4 of the Declarations of these General Terms and Conditions, the total number of employees of the acquired or created organization exceeds twenty-five percent (25%) of the total number of employees of the **Organization** immediately prior-to the acquisition or creation,

then the **Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for its **Insureds**, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

10.    <u>*Acquisition by Another Organization*</u>

If:

(a)    the **Organization** merges into or consolidates with another organization and the **Organization** is not the surviving entity; or

(b)    another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or **Managers** of the **Organization**,

then coverage under this Policy with respect to:

Ex. A Page 40

(i)  any **Liability Coverage Section**: shall continue until termination of such Coverage Section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by the **Insureds** before such merger, consolidation or acquisition;

(ii)  the Crime Coverage Section: shall terminate subject to Subsection 19, Exclusions, of such Coverage Section; or

(iii)  the Kidnap/Ransom and Extortion Coverage Section: shall terminate subject to Subsection 7(h), Exclusions, of such Coverage Section.

Upon the occurrence of any event described in paragraph 10(a) or (b) above, the entire premium for this Policy shall be deemed fully earned. The **Organization** shall give written notice of such merger, consolidation or acquisition to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such merger, consolidation or acquisition, together with such other information as the Company may require.  Upon receipt of such notice and information and at the request of the **Organization**, the Company shall provide to the **Organization** a quotation for an extension of coverage (for such period as may be negotiated between the Company and the **Organization**) with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by the **Insureds** before such merger, consolidation or acquisition.  Any coverage extension pursuant to such quotation shall be subject to such additional or different terms, conditions and limitations of coverage, and payment of such additional premium, as the Company in its sole discretion may require.

11.  *Cessation of Subsidiary*

In the event an organization ceases to be a **Subsidiary** before or during the **Policy Period**, then with respect to any:

(a)  **Liability Coverage Section**: coverage with respect to such former **Subsidiary** and its **Insureds** shall continue until termination of such Coverage Section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted while such organization was a **Subsidiary**; or

(b)  **Non-Liability Coverage Section**: such former **Subsidiary** and its **Insureds** shall cease to be **Insureds** as of the effective date of such cessation, and coverage under such **Non-Liability Coverage Section** shall thereafter apply only as provided in such **Non-Liability Coverage Section**.

---

*Valuation and Foreign Currency*

12.  All premiums, limits, retentions, loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any Coverage Section, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in <u>The Wall Street Journal</u> on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

---

*Subrogation*



13.  In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

## Action Against the Company

14.  No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy.  No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## Organization Rights and Obligations

15.  By acceptance of this Policy, the **Organization** first named in Item 1 of the Declarations of these General Terms and Conditions ("First Named **Organization**") agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this Policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this Policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of **Loss** (and the First Named **Organization** further agrees that it shall be responsible for application of any such payment as provided in this Policy).  Each **Insured** agrees that the First Named **Organization** shall act on its behalf with respect to all such matters.

## Alteration and Assignment

16.  No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

## Termination of Policy or Coverage Section

17.  This Policy or any Coverage Section shall terminate at the earliest of the following times:

(a)  upon expiration of the **Policy Period** as set forth in Item 2(B) of the Declarations of these General Terms and Conditions;

(b)  twenty (20) days after receipt by the **Organization** of a written notice of termination from the Company based upon non-payment of premium, unless the premium is paid within such twenty (20) day period; or

(c)  at such other time as may be agreed upon by the Company and the **Organization**.

The Company shall refund the unearned premium computed pro rata.  Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter.

**Termination of Prior Bonds or Policies**

18.     Any bonds or policies issued by the Company or its affiliates and set forth in Item 6 of the
        Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of
        the inception of this Policy.

**Representations and Severability**

19.     (a)     In granting coverage to the **Insureds** under this Policy, the Company has relied upon the
                declarations and statements in the **Application**. Such declarations and statements are the
                basis of the coverage granted in this Policy and shall be considered as incorporated in and
                constituting part of this Policy.

        (b)     Solely with respect to any **Liability Coverage Section**, the **Application** shall be construed as
                a separate application for coverage by each **Insured Person**, and no fact pertaining to or
                knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person**
                for the purpose of determining if coverage is available.

        (c)     The statements and representations in the **Application** will be deemed to have been made by
                all **Organizations**.  For the purpose of determining if coverage is available, facts pertaining to
                and knowledge possessed by:

                (i)     the Chief Financial Officer, President, Executive Director, Chief Executive Officer or
                        Chairperson of an **Organization** shall be imputed only to that **Organization** and its
                        **Subsidiaries** and their respective **Plans; and**

                (ii)    any individual signing the **Application** shall be imputed to all **Organizations,**
                        **Subsidiaries, Affiliates** and **Plans.**

**Bankruptcy**

20.     Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive
        the Company of its rights or defenses under this Policy.

**Headings**

21.     The descriptions in the headings and sub-headings of this Policy are solely for convenience, and
        form no part of the terms and conditions of coverage.

**Compliance With Applicable Trade Sanction Laws**

22.     This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations
        prohibit us from providing insurance.

14-02-10190 (Ed. 11/2004)            Page 12 of 12



# Schedule of Forms

To be attached to and form part of
Policy No.   6802-1737

Company:   Federal Insurance Company

Issued to:   Screen Actors Guild, Inc.and its Subsidiaries


ForeFront Portfolio for Not-for-Profit Organizations General Terms and Conditions Section (Federal)

14-02-10274 (10/04 ed.)

14-02-1350 (1/95 ed.)

ForeFront Portfolio for Not-for-Profit Organizations D&O Liability & Entity Liability Coverage Section  (Federal)

14-02-10275 (10/04 ed.)

14-02-10440 (11/04 ed.)

Q06-781 (4/06 ed.)

ForeFront Portfolio for Not-for-Profit Organizations Employment Practices Liability Coverage Section  (Federal)

14-02-10276 (10/04 ed.)

14-02-10440 (11/04 ed.)

14-02-12177 (7/06 ed.)

Q06-782 (4/06 ed.)


**CHUBB**

**ENDORSEMENT**

Coverage Section: ForeFront Portfolio for Not-for-Profit Organizations General Terms and Conditions Section (Federal)

Effective date of
this endorsement: March 1, 2007

Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 6802-1737

Issued to: Screen Actors Guild, Inc.and its Subsidiaries

---

### CALIFORNIA AMENDATORY ENDORSEMENT
### TO THE GENERAL TERMS AND CONDITIONS SECTION

In consideration of the premium charged, it is agreed that:

1.  With respect to each Coverage Section other than the Crime Coverage Section and the Kidnap/Ransom and Extortion Coverage Section, Subsection 17. Termination of Policy or Coverage Section (a) of the General Terms and Conditions Section is amended by adding the following at the end of such paragraph (a):

    "provided that, if the Company nonrenews this Policy or any Coverage Section, it will mail or deliver notice of non-renewal to the **Organization** and to the agent of record, if any, at the mailing address shown on this Policy at least sixty (60) but not more than one hundred twenty (120) days before the expiration of the **Policy Period;**"

2.  With respect to each Coverage Section other than the Crime Coverage Section and the Kidnap/Ransom and Extortion Coverage Section, Subsection 11. Termination of Policy or Coverage Section of the General Terms and Conditions Section is amended by adding the following paragraphs at the end of such Subsection:

    "No notice of nonrenewal by the Company is required in any of the following situations:

    (1)  the transfer of, or renewal of, this Policy without a change in its terms or conditions or the rate on which the premium is based to another insurer within the Chubb Group of Insurance Companies;

    (2)  if this Policy is extended for 90 days or less, provided that the Company has given notice of nonrenewal before such extension;

    (3)  if the **Organization** has obtained replacement coverage or has agreed, in writing, within sixty days of the termination of this Policy, to obtain such coverage;

    (4)  if the **Organization** requests a change in the terms or conditions or risks covered by this Policy within sixty days before the end of the **Policy Period;**

    (5)  if this Policy is for a period of no more than sixty days and the Company notifies the **Organization** at the time of issuance that it may not be renewed; or

    (6)  if the Company has made a written offer to the **Organization**, within the required time period for doing so under this Policy, to renew this Policy under changed terms or conditions or at a changed premium rate.

---


**CHUBB**

## ENDORSEMENT

Coverage Section:   ForeFront Portfolio for Not-for-Profit Organizations General Terms and Conditions Section (Federal)

Effective date of
this endorsement: March 1, 2007

Company: Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 6802-1737

Issued to: Screen Actors Guild, Inc.and its Subsidiaries

---

### CALIFORNIA PREMIUM ENDORSEMENT

In consideration of the premium charged, it is agreed that:

It is agreed that in compliance with the ruling of the Commissioner of Insurance of the State of California and the opinion of the Attorney-General of that state requiring that the premium for all bonds or policies be endorsed thereon, the basic premium charged for the attached bond/policy for the period

      From:   March 01, 2007

      To:   March 01, 2008

      Is:   One Hundred Twenty-Four Thousand Three Hundred Twenty and No/100 -- Dollars ($124,320.00)

      CALIFORNIA SURCHARGE    N/A

ALL OTHER TERMS AND CONDITIONS REMAINED UNCHANGED.

*Robert Hamburger*

_____
Authorized Representative

14-02-1350 (Ed. 01/1995)



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*ForeFront Portfolio* <sup>SM</sup>
*For Not-for-Profit Organizations*
*Directors & Officers Liability and*
*Entity Liability Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
a stock insurance company, incorporated under
the laws of Indiana, herein called the Company.

THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS"
FIRST MADE DURING THE "POLICY PERIOD", OR AN APPLICABLE EXTENDED REPORTING PERIOD.
THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE
COSTS" UNLESS OTHERWISE SPECIFIED HEREIN, AND "DEFENSE COSTS" WILL BE APPLIED AGAINST
THE RETENTION.  IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE
AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.
READ THE ENTIRE POLICY CAREFULLY.

Item 1.   **Organization:**
Screen Actors Guild, Inc.and its Subsidiaries
5757 Wilshire Boulevard
Los Angeles, CA, 90036

Item 2.   Limits of Liability:

(A)   Maximum Limit of Liability for this Coverage Section for all **Claims** each
**Policy Year**:                                                                              $5,000,000.00

(B)   Sublimit for all **Excess Benefit Transaction Excise Tax**                              $100,000.00

Note: The Sublimit shown in (B) above is part of, and not in addition to, the Limit of Liability in (A)
above.

Unless the Defense Outside the Limits of Liability Option is purchased pursuant to Item 5 below,
the Limits of Liability will be reduced and may be exhausted by **Defense Costs.**

Item 3.   Retention:

(A)   Insuring Clause 1:                                                   None

(B)   Insuring Clause 2:                                                   $100,000.00

(C)   Insuring Clause 3:                                                   $100,000.00

Item 4.   Pending or Prior Date:                                          January 31, 2005

Item 5.   Defense Outside the Limits of Liability Option purchased:     ☐ Yes   ☒ No



In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

*Insuring Clauses*

*Individual Non-Indemnified Liability Coverage Insuring Clause 1*

1. The Company shall pay, on behalf of each of the **Insured Persons, Loss** for which the **Insured Person** is not indemnified by the **Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 6 of the General Terms and Conditions.

*Individual Indemnified Liability Coverage Insuring Clause 2*

2. The Company shall pay, on behalf of the **Organization, Loss** for which the **Organization** grants indemnification to an **Insured Person**, as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 6 of the General Terms and Conditions.

*Entity Liability Coverage Insuring Clause 3*

3. The Company shall pay, on behalf of the **Organization, Loss** which the **Organization** becomes legally obligated to pay on account of any **Claim** first made against the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Insured Persons** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 6 of the General Terms and Conditions.

*Definitions*

4. When used in this Coverage Section:

   **Claim** means:

   (1) when used in reference to the coverage provided by Insuring Clause 1 or 2:

       (a) a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

    (c)    a criminal proceeding commenced by the return of an indictment; or

    (d)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document, or by the entry of a formal order of investigation or similar document,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom; or

(2)    when used in reference to the coverage provided by Insuring Clause 3:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

    (c)    a criminal proceeding commenced by the return of an indictment; or

    (d)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document, or by the entry of a formal order of investigation or similar document, but only while such proceeding is also pending against an **Insured Person**,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom.

Except as may otherwise be provided in Subsection 8(e) of this Coverage Section, or Subsection 4 or Subsection 6(b) of the General Terms and Conditions, a **Claim** will be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand, when such demand is first received by an **Insured**).

**Defense Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers, trustees or any duly constituted committee member or **Employees of the Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

**Employee** means any natural person whose labor or service is engaged by and directed by the **Organization**, including any part-time, seasonal, leased or temporary employees or volunteers. **Employee** shall not include any independent contractor.

**Excess Benefit Transaction** means an "excess benefit transaction" as that term is defined in Section 4958(c) of the Internal Revenue Code, 26 U.S.C. § 4958(c).

**Excess Benefit Transaction Excise Tax** means any excise tax imposed by the Internal Revenue Service, pursuant to Section 4958(a)(2) of the Internal Revenue Code, 26 U.S.C. § 4958(a)(2), on an **Insured Person** who is an **Organization Manager** as a result of such **Insured Person's** participation in an **Excess Benefit Transaction**.

**Executive** means any natural person who was, now is or shall become:

(a)    a duly elected or appointed director, officer, trustee, **Manager**, in-house general counsel, or duly constituted committee member of any **Organization** chartered in the United States of America; or



(b)     a holder of a position equivalent to any position described in (a) above in any **Organization** that is chartered in any jurisdiction other than the United States of America.

**Insured** means the **Organization** and any **Insured Person**.

**Insured Person** means any natural person who was, now is or shall become an **Executive** or **Employee** of any **Organization**.

**Loss** means the amount that any **Insured** becomes legally obligated to pay on account of any covered **Claim**, including but not limited to:

(i)     damages (including punitive or exemplary damages, if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages);

(ii)    judgments;

(iii)   settlements;

(iv)    pre-judgment and post-judgment interest;

(v)     **Excess Benefit Transaction Excise Taxes** in an amount not to exceed the sublimit set forth in Item 2(B) of the Declarations for this Coverage Section, but only if and to the extent that indemnification by the **Organization** for **Excess Benefit Transaction Excise Taxes** is not expressly prohibited in the bylaws, certificate of incorporation or other organizational documents of the **Organization**; and

(vi)    **Defense Costs.**

**Loss** does not include:

(a)     any amount not indemnified by the **Organization** for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

(b)     any costs incurred by the **Organization** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c)     any amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that is not then a **Claim** even if (i) such amount also benefits the defense of a covered **Claim**, or (ii) such action, proceeding or demand subsequently gives rise to a **Claim**;

(d)     taxes, fines or penalties, or the multiple portion of any multiplied damage award, except as provided above with respect to punitive or exemplary damages and **Excess Benefit Transaction Excise Taxes**;

(e)     any amount not insurable under the law pursuant to which this Coverage Section is construed, except as provided above with respect to punitive or exemplary damages;

(f)     any amount allocated to non-covered loss pursuant to Subsection 11, Allocation, of this Coverage Section, or

(g)     any amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets.

**Organization Manager** means an "organization manager" as that term is defined in Section 4958(f) of the Internal Revenue Code, 26 U.S.C. § 4958(f).

**Outside Capacity** means service by an **Insured Person** in the position of director, officer, trustee, regent, or governor (or any equivalent executive position) of an **Outside Entity**, but only during the time that such service is with the knowledge and consent or at the request of the **Organization**.

**Outside Capacity Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Outside Capacity**.

**Outside Entity** means:

(1)     any non-profit corporation, community chest, fund or foundation that is not included in the definition of **Organization** and that is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended;

(2)     any other entity organized for a religious or charitable purpose under any non-profit organization act or statute; and

(3)     if specifically added as an **Outside Entity** by written endorsement attached to this Policy, any other non-profit or any for-profit entity,

but does not include any **Subsidiary** or **Affiliate.**

**Personal Injury Wrongful Act** means any:

(1)     false arrest, wrongful detention or imprisonment or malicious prosecution;

(2)     libel, slander, defamation of character, or publication of material in violation of a person's right of privacy; or

(3)     wrongful entry or eviction or other invasion of the right of privacy.

**Publisher Wrongful Act** means any:

(1)     infringement of copyright or trademark or unauthorized use of title; or

(2)     plagiarism or misappropriation of ideas.

**Securities Laws** means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, any state "blue sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase, of securities.



**ForeFront Portfolio** ℠
**For Not-for-Profit Organizations**
*Directors & Officers Liability and*
*Entity Liability Coverage Section*

**Wrongful Act** means:

(a) any error, misstatement, misleading statement, act, omission, neglect, breach of duty, **Personal Injury Wrongful Act** or **Publisher Wrongful Act** committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Insured Capacity** or, for purposes of coverage under Insuring Clause 3, by the **Organization**;

(b) any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**; or

(c) any **Outside Capacity Wrongful Act**.

---

### Exclusions

*Applicable To All Insuring Clauses*

5. The Company shall not be liable for **Loss** on account of any **Claim**:

(a) based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice given under any policy or coverage section of which this Coverage Section is a direct or indirect renewal or replacement;

(b) based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in Item 4 of the Declarations for this Coverage Section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(c) brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion 5(c) shall not apply to:

(i) a **Claim** brought or maintained derivatively on behalf of the **Organization** by one or more securityholders of the **Organization** or persons who are not **Insured Persons**, provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Executive**;

(ii) a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this Coverage Section;

(iii) a **Claim** brought by an **Executive** who has not served as an **Executive** of the **Organization** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, the **Organization** or any other **Executive** who is serving or has served as an **Executive** within such four (4) year period; or

(iv) a **Claim** brought or maintained by **Employees** who are not past or present **Executives** of an **Organization** if such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any such **Executives**;

Ex. A Page 52

(d)    based upon, arising from, or in consequence of:

  (i)    any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

  (ii)    any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request;

  including but not limited to any **Claim** for financial loss to the **Organization**, to any member, securityholder or creditor of the **Organization**, to any **Outside Entity**, or to any member, securityholder or creditor of an **Outside Entity** based upon, arising from, or in consequence of any matter described in clause (i) or (ii) of this Exclusion 5(d);

(e)    for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

(f)    for an actual or alleged violation of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974, or any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(g)    for **Outside Capacity Wrongful Acts**, if such **Claim** is brought or maintained by or on behalf of (i) an **Outside Entity** with which the **Insured Person** is serving or has served in an **Outside Capacity** or (ii) any director, officer, trustee, governor or equivalent executive of such an **Outside Entity** acting in any capacity; provided, however, that this Exclusion 5(g) shall not apply to:

  (i)    a **Claim** brought or maintained derivatively on behalf of the **Outside Entity** by one or more securityholders or members of the **Outside Entity** who are not **Insured Persons** and are not directors, officers, trustees, governors or equivalent executives of the **Outside Entity** and who bring and maintain such **Claim** without the solicitation, assistance or participation of any **Insured Person** or of any director, officer, trustee, governor or equivalent executive of the **Outside Entity**; or

  (ii)    a **Claim** brought or maintained by a director, officer, trustee, governor or equivalent executive of an **Outside Entity** for contribution or indemnification, if such **Claim** directly results from another **Claim** covered under this Coverage Section;

(h)    for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor or employee of any entity other than the **Organization**, even if the **Insured Person's** service in such capacity is with the knowledge and consent or at the request of the **Organization**, provided, however, that this Exclusion 5(h) shall not apply to service in an **Outside Capacity**;

(i)    made against a **Subsidiary** or **Affiliate** or an **Insured Person** of such **Subsidiary** or **Affiliate** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted during any time when such entity was not a **Subsidiary** or **Affiliate**;



(j)    made against any **Insured** based upon, arising from, or in consequence of:

    (i)    the committing of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**, as evidenced by a final and non-appealable judgment or adjudication, or, in a criminal proceeding, as evidenced by any plea of guilty, nolo contendere or no contest, or any similar plea; or

    (ii)    such **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled;

(k)    based upon, arising from, or in consequence of the actual or alleged violation of any **Securities Laws**; provided that this Exclusion 5(k) shall not apply to the extent that such **Claim** is based upon, arises from or is in consequence of the **Organization's** offer or sale of debt securities of the **Organization** in a transaction that is (or in a series of transactions that are) exempt from registration under the Securities Act of 1933, as amended, and under the rules and regulations promulgated thereunder;

(l)    or any employment-related **Wrongful Act**; or

(m)    based upon, arising from, or in consequence of any actual or alleged discrimination against or sexual harassment of any person or entity that is not an **Insured**.

---

*Applicable to Insuring Clause 3 Only*

6.    (a)    The Company shall not be liable under Insuring Clause 3 for **Loss**, other than **Defense Costs**, on account of any **Claim** based upon, arising from, or in consequence of any actual or alleged liability of an **Organization** under any written or oral contract or agreement, provided that this Exclusion 6(a) shall not apply to the extent that the **Organization** would have been liable in the absence of such contract or agreement.

    (b)    The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any actual or alleged infringement of patent or misappropriation of intellectual property, ideas or trade secrets, provided that this Exclusion 6(b) shall not apply to any **Publisher Wrongful Act**.

---

*Severability of Exclusions*

7.    (a)    No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of applying Exclusion 5(j) of this Coverage Section.

    (b)    Only facts pertaining to and knowledge possessed by any past, present, or future chief financial officer, in-house general counsel, president, chief executive officer, executive director, trustee, duly constituted committee member or chairperson of an **Organization** shall be imputed to such **Organization** for the purpose of applying Exclusion 5(j) of this Coverage Section.

---

*ForeFront Portfolio* ℠
*For Not-for-Profit Organizations*
*Directors & Officers Liability and*
*Entity Liability Coverage Section*

*Limit of Liability and Retention*

8.   (a)   The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during each **Policy Year**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each **Policy Year** set forth in Item 2(A) of the Declarations for this Coverage Section.

(b)   Solely in the event that the Defense Outside the Limits of Liability Option is purchased as set forth in Item 5 of the Declarations of this Coverage Section, **Defense Costs** shall be in addition to, and not part of, the applicable Limits of Liability set forth in Item 2 of the Declarations for this Coverage Section, and payment of **Defense Costs** by the Company shall not reduce or exhaust such applicable Limits of Liability; provided, however, that when such applicable Limits of Liability are exhausted by payment of **Loss** other than **Defense Costs**, any obligation of the Company to pay **Defense Costs** or to defend or continue to defend any **Claim** shall cease.

If the Defense Outside the Limits of Liability Option is not purchased as set forth in Item 5 of the Declarations of this Coverage Section, **Defense Costs** are part of and not in addition to the Limits of Liability set forth in Item 2 of the Declarations of this Coverage Section and payment of **Defense Costs** by the Company shall reduce, and may exhaust, such Limits of Liability. When the Limits of Liability are exhausted by payment of **Defense Costs** or other **Loss**, any obligation of the Company to pay **Defense Costs** or to defend or continue to defend any **Claim** shall cease.

(c)   The Company's liability under Insuring Clause 2 or 3 shall apply only to that part of covered **Loss** (as determined by any applicable provision in Subsection 11, Allocation, of this Coverage Section) on account of each **Claim** which is excess of the applicable Retention set forth in Item 3 of the Declarations for this Coverage Section. Such Retention shall be depleted only by **Loss** otherwise covered under this Coverage Section, and shall be borne by the **Insureds** uninsured and at their own risk.

(d)   If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(e)   All **Related Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made, or on the date the earliest of such **Related Claims** is treated as having been made in accordance with Subsection 6 of the General Terms and Conditions, regardless of whether such date is before or during the **Policy Period**.

(f)   The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the immediately preceding **Policy Year**.

*Presumptive Indemnification*

9.   If the **Organization** fails or refuses, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss**, or to advance **Defense Costs** on behalf of an **Insured Person**, to the fullest extent permitted by statutory or common law, then, notwithstanding any other conditions, provisions or terms of this Coverage Section to the contrary, any payment by the Company of such **Defense Costs** or other **Loss** shall be subject to the applicable Insuring Clause 2 Retention set forth in Item 3 of the Declarations for this Coverage Section.

Ex. A Page 55



**CHUBB**

### Defense and Settlement

10. (a) The Company shall have the right and duty to defend any **Claim** covered by this Coverage Section, even if any of the allegations in such **Claim** are groundless, false or fraudulent. Defense counsel shall be selected by the Company. The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(b) The Company may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient.

Solely in the event that the Defense Outside the Limits of Liability Option is purchased as set forth in Item 5 of the Declarations of this Coverage Section, if an **Insured** in any **Claim** withholds consent to any settlement acceptable to the claimant in accordance with the Company's recommendation (a "Proposed Settlement"), the **Insureds** will thereafter be responsible for defending such **Claim** at their own expense and, subject in all events to the Company's maximum Limit of Liability, the Company's liability for **Loss** with respect to any such **Claim** will not exceed the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement.

If the Defense Outside the Limits of Liability Option is not purchased as set forth in Item 5 of the Declarations of this Coverage Section, in the event an **Insured** in any **Claim** withholds consent to a Proposed Settlement, the Company's liability with respect to such **Claim** shall not exceed:

(i) the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement; plus

(ii) seventy percent (70%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (i) above, incurred in connection with such **Claim**; subject in all events to the applicable Retention and Limits of Liability for such **Claim**. The remaining thirty percent (30%) of **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (i) above shall be borne by the **Insureds** uninsured and at their own risk, notwithstanding anything to the contrary contained in Subsection 11(a) Allocation.

(c) The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent. The Company shall not be liable for any element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent.

(d) The Company will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the maximum Limit of Liability applicable to the **Policy Year** in which such **Claim** was first made or is deemed to have first been made has been exhausted. If the Company's Limit of Liability in any **Policy Year** is exhausted, the Policy premium applicable to such **Policy Year** will be fully earned.

(e) If the Combined Maximum Aggregate Limit of Liability for all **Liability Coverage Sections** is elected, as set forth in Item 3 of the Declarations of the General Terms and Conditions, then the Company will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's Combined Maximum Aggregate Limit of Liability applicable to the **Policy Year** in which such **Claim** was first made or is deemed to have first been made has been exhausted. If the Company's Combined Maximum Aggregate Limit of Liability in any **Policy Year** is exhausted, the Policy premium applicable to such **Policy Year** will be fully earned.

**ForeFront Portfolio** <sup>SM</sup>
**For Not-for-Profit Organizations**
*Directors & Officers Liability and*
*Entity Liability Coverage Section*

(f) The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

## Allocation

11. (a) If both **Loss** covered under this Coverage Section and loss not covered under this Coverage Section are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters, then coverage under this Coverage Section with respect to such **Claim** shall apply as follows:

    (i) **Defense Costs**: One hundred percent (100%) of reasonable and necessary **Defense Costs** incurred by the **Insured** on account of such **Claim** will be considered covered **Loss**; and

    (ii) Loss other than **Defense Costs**: All remaining loss incurred by the **Insured** on account of such **Claim** shall be allocated by the Company between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Claim**, also based on the relative benefits to the **Insureds** from such settlement.

    (b) If the **Insureds** and the Company cannot agree on an allocation of loss:

    (i) no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and

    (ii) the Company, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

## Other Insurance

12. (a) If any **Loss** under this Coverage Section is insured under any other valid and collectible insurance policy(ies) (including General Liability Insurance), then this Coverage Section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this Coverage Section. Any payment by **Insureds** of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this Coverage Section, the applicable Retention under this Coverage Section.

Ex. A Page 57


**CHUBB**

*ForeFront Portfolio* <sup>SM</sup>
*For Not-for-Profit Organizations*
*Directors & Officers Liability and*
*Entity Liability Coverage Section*

(b)   Any coverage for **Claims** for **Outside Capacity Wrongful Acts** will be specifically excess of any insurance provided by or indemnification available from the **Outside Entity** or any other source, other than the **Organization**, for the benefit of the **Insured Person** serving in such **Outside Capacity**. Payment by the Company or any affiliate of the Company under another policy as a result of a **Claim** against an **Insured Person** in an **Outside Capacity** shall reduce, by the amount of such payment, the Company's Limit of Liability under this Coverage Section with respect to such **Claim**.

---

**Payment of Loss**

13.   In the event payment of **Loss** is due under this Coverage Section but the amount of such **Loss** in the aggregate exceeds the remaining available Limit of Liability for this Coverage Section, the Company shall:

(a)   first pay such **Loss** for which coverage is provided under Insuring Clause 1 of this Coverage Section; then

(b)   to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such **Loss** for which coverage is provided under any other Insuring Clause of this Coverage Section.

Except as otherwise provided in this Subsection 13, the Company may pay covered **Loss** as it becomes due under this Coverage Section without regard to the potential for other future payment obligations under this Coverage Section.

---


**CHUBB**

**ENDORSEMENT**

Coverage Section:  ForeFront Portfolio for Not-for-Profit Organizations D&O Liability & Entity Liability Coverage Section  (Federal)

Effective date of
this endorsement:  March 1, 2007

Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 6802-1737

Issued to:  Screen Actors Guild, Inc.and its Subsidiaries

---

## CALIFORNIA AMENDATORY ENDORSEMENT
### TO THE DIRECTORS AND OFFICERS LIABILITY AND ENTITY LIABILITY COVERAGE SECTION

In consideration of the premium charged, it is understood and agreed that:

1.  The parenthetical phrase in paragraph (i) of the definition of "**Loss**" set forth in Subsection 4.
    Definitions of the Directors and Officers Liability and Entity Liability Coverage Section is amended
    to read as follows:

    "(including punitive or exemplary damages, if and to the extent that (1) such punitive or
    exemplary damages are insurable under the law of the jurisdiction most favorable to the
    insurability of such damages provided such jurisdiction has a substantial relationship to the
    relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages, and (2) such
    **Claim** is brought in a federal or state court other than a California state court)"

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this
Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take
precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are
inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or
endorsement provisions comply with the applicable insurance laws of the state of California.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Robert Hamburger

Authorized Representative

14-02-10275 (10/2004 ed.)                    Page 1

Ex. A Page 59


**CHUBB**

**ENDORSEMENT**

Coverage Section: ForeFront Portfolio for Not-for-Profit Organizations D&O Liability & Entity Liability Coverage Section  (Federal)

Effective date of
this endorsement: March 1, 2007

Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 6802-1737

Issued to:  Screen Actors Guild, Inc.and its Subsidiaries

### SPECIFIC ENTITY EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that no coverage will be available under this Coverage Section for **Loss** on account of any **Claim**:

(a)     made against, or brought or maintained by or on behalf of:

    (i)     Screen Actors Guild Pension and Benefit Plan;

    (ii)     any subsidiary of Screen Actors Guild Pension and Benefit Plan; or

    (iii)     any past, present or future director, officer, trustee, duly constituted committee member, employee, volunteer or shareholder of (A) Screen Actors Guild Pension and Benefit Plan or of (B) any subsidiary of Screen Actors Guild Pension and Benefit Plan; or

(b)     based upon, arising from, or in consequence of any **Wrongful Act** committed, attempted, or allegedly committed or attempted by:

    (i)     Screen Actors Guild Pension and Benefit Plan;

    (ii)     any subsidiary of Screen Actors Guild Pension and Benefit Plan; or

    (iii)     any past, present or future director, officer, trustee, duly constituted committee member, employee or volunteer of (A) Screen Actors Guild Pension and Benefit Plan or of (B) any subsidiary of Screen Actors Guild Pension and Benefit Plan.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

14-02-10440 (11/2004)                    Page 1

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____

Authorized Representative


**CHUBB**

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio for Not-for-Profit Organizations D&O Liability & Entity Liability Coverage Section (Federal)

Effective date of
this endorsement/rider: March 1, 2007

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 6802-1737

Issued to: Screen Actors Guild, Inc.and its Subsidiaries

---

### LABOR NEGOTIATION EXCLUSION

In consideration of the premium charged, it is agreed that no coverage will be available under this Coverage Section for **Loss** on account of any **Claim** based upon, arising from, or in consequence of:

(a)     any lockout, strike, picket line, hiring of replacement workers, collective bargaining, mediation, arbitration or other similar actions in connection with labor disputes or labor negotiations; or

(b)     any collectively bargained or negotiated labor agreement.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

Q06-781 (04/2006)                    Page 1



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*ForeFront Portfolio* <sup>SM</sup>
*For Not-for-Profit Organizations*
*Employment Practices Liability*
*Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
a stock insurance company, incorporated under
the laws of Indiana, herein called the Company.

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR AN APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABLITY TO PAY "LOSS" WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN, AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Organization:**
Screen Actors Guild, Inc.and its Subsidiaries
5757 Wilshire Boulevard
Los Angeles, CA, 90036

Item 2.    Limits of Liability:

    (A)    Maximum Limit of Liability for this Coverage Section for all **Claims**
each **Policy Year**:                        $5,000,000.00

    (B)    Sublimit for all **Third Party Claims** each **Policy Year** under Insuring
Clause 2 -Third Party Liability:          $5,000,000.00

    Note: The Sublimit shown in (B) above is part of, and not in addition to, the Limit of Liability
in (A) above.

          Unless the Defense Outside the Limits of Liability Option is purchased pursuant to Item 6 below,
the Limits of Liability will be reduced and may be exhausted by **Defense Costs.**

Item 3.    Retention:

    (A) Insuring Clause 1:                $425,000.00

    (B) Insuring Clause 2:                $425,000.00

Item 4.    Pending or Prior Date:

    (A) Insuring Clause 1:                January 31, 2005

    (B) Insuring Clause 2:                January 31, 2005

Item 5.    Third Party Liability Coverage purchased:    [X] Yes    [ ] No

Item 6.    Defense Outside the Limits of Liability Option purchased:    [ ] Yes    [X] No

14-02-10192 (Ed. 10/2004)          Page 1 of 14

Ex. A Page 63



**CHUBB**

In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

### Insuring Clauses

*Employment Practices Liability Coverage*

1.  The Company shall pay, on behalf of the **Insureds, Loss** on account of any **Employment Claim** first made against such **Insureds** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for **Employment Practices Wrongful Acts,** but only if such **Employment Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 6 of the General Terms and Conditions Section of this Policy.

*Third Party Liability Coverage (if purchased)*

2.  If Third Party Liability Coverage is purchased as set forth in Item 5 of the Declarations for this Coverage Section, the Company shall pay, on behalf of the **Insureds, Loss** on account of any **Third Party Claim** first made against such **Insureds** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for **Third Party Wrongful Acts,** but only if such **Third Party Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 6 of the General Terms and Conditions Section of this Policy.

### Definitions

3.  When used in this Coverage Section:

    **Benefits** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan and any other payment to or for the benefit of an employee arising out of the employment relationship. **Benefits** shall not include salary, wages, commissions, or non-deferred cash incentive compensation.

    **Breach of Employment Contract** means any breach of any oral, written or implied employment contract or employment contractual obligation, including but not limited to any contract or contractual obligation arising out of any personnel manual, employee handbook, policy statement or other representation.

    **Claim** means any **Employment Claim** and any **Third Party Claim.**

    **Defense Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, or **Benefits** of the directors, officers, trustees, faculty or any duly constituted committee member or employees of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

    **Employment Claim** means:

(1)   any of the following:

    (a)   a written demand for monetary relief or a written demand for reinstatement, re-employment or re-engagement;

    (b)   a civil proceeding commenced by the service of a complaint, summons, notice of application, writ, claim form or similar pleading in any jurisdiction in the world;

    (c)   an arbitration proceeding pursuant to an employment contract, policy or practice of the **Organization** commenced by receipt of a demand for arbitration or similar document;

    (d)   a criminal proceeding outside the United States of America commenced by a return of an indictment or information or similar document; or

    (e)   a formal administrative, regulatory or tribunal proceeding commenced by the issuance of a notice of charge, formal investigative order or similar document, including but not limited to any such proceeding brought by or in association with the Equal Employment Opportunity Commission or any other similar governmental agency located anywhere in the world with jurisdiction over the **Organization's** employment practices; provided that in the context of an audit conducted by the Office of Federal Contract Compliance Programs, **Employment Claim** shall be limited to a Notice of Violation or Order to Show Cause or written demand for monetary damages or injunctive relief,

which is brought and maintained by or on behalf of any past, present or prospective employee, volunteer or **Independent Contractor** of the **Organization** against any **Insured** for any **Employment Practices Wrongful Act** (even if such **Employment Practices Wrongful Act** is related to allegations in a criminal proceeding), including any appeal therefrom; or

(2)   a written request received by an **Insured** to toll or waive a statute of limitations relating to a potential **Employment Claim** as described in paragraph (1) above;

provided that, **Employment Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

**Employment Discrimination** means any violation of employment discrimination laws including any actual, alleged or constructive termination, dismissal, or discharge of employment, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote an employee or applicant for employment, or any limitation, segregation or classification of any employee or applicant for employment in any way that would deprive or tend to deprive such person of employment opportunities or otherwise affect his or her status as an employee based on such person's race, color, religion, creed, age, sex, national origin, disability, pregnancy, HIV status, marital status, sexual orientation or preference, military status or other status that is protected pursuant to any applicable federal, state, or local statutory law or common law anywhere in the world.

**Employment Harassment** means:

(a)   sexual harassment, including any unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a condition of employment with or used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, the **Organization**; or

(b)   workplace harassment, including work related harassment of a non-sexual nature that interferes with performance or creates an intimidating, hostile or offensive working environment within the **Organization**.



**CHUBB**

**Employment Practices Wrongful Act** means any actual or alleged:

(a)   **Breach of Employment Contract;**

(b)   **Employment Discrimination;**

(c)   **Employment Harassment;**

(d)   **Retaliation;**

(e)   **Workplace Tort;**

(f)   **Wrongful Employment Decision;** or

(g)   **Wrongful Termination,**

committed, attempted, or allegedly committed or attempted by any **Organization** or by any **Insured Person** in his or her capacity as such.

**Independent Contractor** means any natural person working for the **Organization** in the capacity of an independent contractor pursuant to an **Independent Contractor Services Agreement**.

**Independent Contractor Services Agreement** means any express contract or agreement between an **Independent Contractor** and the **Organization**.

**Insured(s)** means the **Organization** and any **Insured Person**.

**Insured Person** means any natural person who was, now is or shall become:

(a)   a full-time, part-time, temporary, leased or seasonal employee or volunteer of the **Organization** but only while acting in his or her capacity as such;

(b)   a duly elected or appointed natural person director, officer, trustee or duly constituted committee member of any **Organization** but only while acting in his or her capacity as such; or

(c)   an **Independent Contractor** working for the **Organization**, but only while acting in his or her capacity as such and only if the **Organization** agrees in writing, prior to or no later than thirty (30) days after the **Claim** is made, to indemnify the **Independent Contractor** for liability arising out of such **Claim**.

**Interrelated Wrongful Acts** means any causally connected **Wrongful Acts**.

**Loss** means the amount which an **Insured** becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive and exemplary damages, liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act, or the multiple portion of any multiplied damage award, if and to the extent such punitive, exemplary, liquidated or multiple damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, the Company, this Policy or the **Claim** giving rise to the damages), back pay, front pay, claimant's attorney's fees awarded by a court against an **Insured** or agreed to by the Company in connection with a settlement (but only if such claimant's attorney's fees are agreed to in writing by the Company at the time of or after a final settlement), judgments, settlements, pre-judgment interest, post-judgment interest, and **Defense Costs**.

**Loss** does not include:

(a)     any amount not indemnified by the **Organization** for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order;

(b)     the future salary, wages, commissions or **Benefits** of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement of, order in or other resolution of any **Claim**;

(c)     taxes, fines, or penalties, except as provided above with respect to punitive, exemplary, liquidated or the multiple portion of any multiplied damages;

(d)     any amount not insurable under the law pursuant to which this Coverage Section is construed, except as provided above with respect to punitive, exemplary, liquidated or the multiple portion of any multiplied damages;

(e)     any salary, wages, commissions, **Benefits** or other monetary payments which constitute severance payments or payments pursuant to a notice period;

(f)     any amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that is not then a **Claim** even if (i) such amount also benefits the defense of a covered **Claim**, or (ii) such action, proceeding or demand subsequently gives rise to a **Claim**; or

(g)     any amount allocated to non-covered loss pursuant to Subsection 10 of this Coverage Section.

**Potential Employment Claim** means a complaint or allegation of an **Employment Practices Wrongful Act** by or on behalf of a potential claimant if such complaint or allegation (a) does not constitute an **Employment Claim** but may subsequently give rise to an **Employment Claim**, and (b) is lodged with the **Organization's** human resources department or other comparable department.

**Potential Third Party Claim** means a complaint or allegation of a **Third Party Wrongful Act** if such complaint or allegation (a) does not constitute a **Third Party Claim** but may subsequently give rise to a **Third Party Claim**, (b) is brought by or on behalf of a **Third Party**, and (c) is lodged with the **Organization's** legal department or with an individual responsible to receive such complaints or allegations.

**Retaliation** means retaliatory treatment against an employee, volunteer or **Independent Contractor** of the **Organization** on account of such individual:

(a)     exercising his or her rights under law;

(b)     refusing to violate any law;

(c)     opposing any unlawful practice;

(d)     disclosing or threatening to disclose to a superior or to any governmental agency any alleged violations of law; or

(e)     having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law by the **Insured**.
**Third Party** means any natural person who is a customer, vendor, service provider or other business invitee of the **Organization**.

**Third Party Claim** means:

(1)     any of the following:

Ex. A Page 67



**ForeFront Portfolio** <sup>SM</sup>
**For Not-for-Profit Organizations**
*Employment Practices Liability*
*Coverage Section*

(a)   a written demand for monetary relief or non-monetary relief;

(b)   a civil proceeding commenced by the service of a complaint, summons, notice of application, writ, claim form or similar pleading in any jurisdiction in the world;

(c)   an arbitration proceeding commenced by receipt of a demand for arbitration or similar document; or

(d)   an administrative, regulatory or tribunal proceeding commenced by the issuance of a notice of charge, formal investigative order or similar document,

which is brought and maintained by or on behalf of a **Third Party** against any **Insured** for a **Third Party Wrongful Act**, including any appeal therefrom; or

(2)   a written request received by an **Insured** to toll or waive a statute of limitations relating to a potential **Third Party Claim** as described in paragraph (1) above.

**Third Party Services Agreement** means any express contract between a **Third Party** and the **Organization**.

**Third Party Wrongful Act** means:

(a)   discrimination against a **Third Party** based upon such **Third Party's** race, color, religion, creed, age, sex, national origin, disability, pregnancy, HIV status, marital status, sexual orientation or preference, military status or other status that is protected pursuant to any applicable federal, state, or local statutory law or common law anywhere in the world; or

(b)   sexual harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a **Third Party**,

committed, attempted, or allegedly committed or attempted by any **Organization** or by any **Insured Person** in his or her capacity as such.

**Workplace Tort** means:

(a)   any employment-related: defamation (including libel and slander), invasion of privacy, negligent evaluation, or wrongful discipline; or

(b)   any of the following:

(i)     employment-related negligent retention;

(ii)    employment-related negligent supervision;

(iii)   employment-related negligent hiring;

(iv)   employment-related negligent training;
(v)    employment-related negligent or intentional misrepresentation;

(vi)   employment-related wrongful infliction of emotional distress, mental anguish or humiliation; or

(vii)  failure to provide or consistently enforce employment-related corporate policies and procedures;

Ex. A Page 68

but only when alleged as part of an **Employment Claim** for any actual or alleged **Breach of Employment Contract, Employment Discrimination, Employment Harassment, Retaliation, Wrongful Termination, Wrongful Employment Decision** or act set forth in paragraph (a) above.

**Wrongful Act** means an **Employment Practices Wrongful Act** and, if Third Party Liability Coverage is purchased, a **Third Party Wrongful Act**.

**Wrongful Employment Decision** means any wrongful demotion, denial of tenure or failure or refusal to promote.

**Wrongful Termination** means any wrongful termination, dismissal, or discharge of employment, including constructive termination, dismissal or discharge. **Wrongful Termination** does not include **Breach of Employment Contract**.

## Exclusions

4.   The Company shall not be liable for **Loss** on account of any **Claim:**

(a)   based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A) of the Declarations for the General Terms and Conditions, was the subject of any notice given under any policy or coverage section of which this Coverage Section is a direct or indirect renewal or replacement;

(b)   based upon, arising from, or in consequence of:

(i)   any:

(A)   written demand seeking monetary relief;

(B)   written demand alleging an **Employment Practices Wrongful Act** and seeking reinstatement, re-employment or re-engagement;

(C)   written demand alleging a **Third Party Wrongful Act** and seeking non-monetary relief;

(D)   civil proceeding seeking monetary or non-monetary relief;

(E)   administrative, regulatory or tribunal proceeding commenced by the issuance of a notice of charge or complaint of discrimination by the Equal Employment Opportunity Commission or any other federal, state or local governmental agency authorized to investigate or adjudicate an actual or alleged **Employment Practices Wrongful Act** or **Third Party Wrongful Act**;

(F)   Notice of Violation or Order to Show Cause resulting from an audit conducted by the Office of Federal Contract Compliance Programs; or

(G)   arbitration proceeding;

which was pending against any **Insured** on or prior to the applicable Pending or Prior Date set forth in Item 4 of the Declarations for this Coverage Section, or any of the same or substantially similar facts or situations underlying or alleged therein, including but not limited to any such **Claim** which is brought by or on behalf of the original claimant in any matter set forth in subparagraphs (A)-(G) above or any other claimant; or



(ii)   any order, decree or judgment which was entered for or against any **Insured** on or prior to the applicable Pending or Prior Date set forth in Item 4 of the Declarations for this Coverage Section, or any of the same or substantially similar facts or situations underlying any such order, decree or judgment;

(c)   for any actual or alleged violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including but not limited to the Employee Retirement Income Security Act of 1974 (except section 510 thereof) and the Consolidated Omnibus Budget Reconciliation Act of 1985) or amendments to or regulations promulgated under any such law that governs any employee benefit arrangement, program, policy, plan or scheme of any type (whether or not legally required or whether provided during or subsequent to employment with an **Organization**) ("Employee Benefits Program Laws"), including but not limited to any:

  (i)   retirement income or pension benefit program;

  (ii)   employee stock purchase or employee stock ownership plan;

  (iii)   profit sharing plan;

  (iv)   deferred compensation plan;

  (v)   vacation, maternity leave, personal leave, or parental leave;

  (vi)   severance pay arrangement;

  (vii)   supplementary unemployment compensation plan;

  (viii)   apprenticeship program;

  (ix)   pre-paid legal service plan or scholarship plan;

  (x)   life insurance plan;

  (xi)   health, sickness, medical, dental, disability or dependant care plan;

  (xii)   welfare plan; or

  (xiii)   similar arrangement, program, plan or scheme;

  provided that this Exclusion 4(c) shall not apply to any **Employment Claim** for **Retaliation**;

(d)   for any actual or alleged violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including but not limited to the Occupational Safety and Health Act) or amendments to or regulations promulgated under any such law that governs workplace safety and health ("Occupational Safety and Health Laws"), including but not limited to any obligation to maintain a place of employment free from hazards likely to cause physical harm, injury or death; provided that this Exclusion 4(d) shall not apply to any **Employment Claim** for **Retaliation**;

(e)   for any actual or alleged violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including but not limited to the Fair Labor Standards Act) or amendments to or regulations promulgated under any

Ex. A Page 70

such law that governs wage, hour and payroll policies and practices, except the Equal Pay Act ("Wage and Hour Laws"), including but not limited to:

(i)    the calculation, timing or manner of payment of minimum wages, prevailing wage rates, overtime pay or other compensation alleged to be due and owing;

(ii)    the classification of any organization or person for wage and hour purposes;

(iii)    garnishments, withholdings or other deductions from wages;

(iv)    child labor;

(v)    pay equity or comparable worth; or

(vi)    any similar policies or practices;

provided that this Exclusion 4(e) shall not apply to any **Employment Claim** for **Retaliation**;

(f)    for any actual or alleged violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including but not limited to the Worker Adjustment and Retraining Notification Act) or amendments to or regulations promulgated under any such law that governs any obligation of an employer to notify, discuss or bargain with its employees or others in advance of any plant or facility closing, or mass layoff, or any similar obligation ("Workforce Notification Laws"); provided that this Exclusion 4(f) shall not apply to any **Employment Claim** for **Retaliation**;

(g)    for any actual or alleged violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including but not limited to the National Labor Relations Act) or any amendments to or regulations promulgated under any such law that governs:

(i)    the rights of employees to engage in, or to refrain from engaging in, union or other collective activities, including but not limited to union organizing, union elections and other union activities;

(ii)    the duty or obligation of an employer to meet, discuss, notify or bargain with any employee or employee representative, collectively or otherwise;

(iii)    the enforcement of any collective bargaining agreement, including but not limited to grievance and arbitration proceedings;

(iv)    strikes, work stoppages, boycotts, picketing and lockouts; or

(v)    any similar rights or duties ("Labor Management Relations Laws");

(h)    for bodily injury, mental anguish, emotional distress, humiliation, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion 4(h) shall not apply to mental anguish, emotional distress or humiliation resulting from any **Wrongful Act**;

(i)    based upon, arising from, or in consequence of any actual or alleged obligation of any **Insured** pursuant to any workers' compensation, unemployment insurance, social security, disability benefits or any similar federal, state, or local statutory law or common law anywhere in the world; provided that this Exclusion 4(i) shall not apply to any **Employment Claim** for **Retaliation**;

(j)    based upon, arising from, or in consequence of:

(i) any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

(ii) any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to the **Organization**, its members or its creditors based upon, arising from, or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 4(j); provided that this Exclusion 4(j) shall not apply to any **Employment Claim** for **Retaliation**;

(k) based upon, arising from, or in consequence of the liability of others assumed by any **Insured** under any written or oral contract or agreement; provided that this Exclusion 4(k) shall not apply to the extent that an **Insured** would have been liable in the absence of such contract or agreement;

(l) made against a **Subsidiary** or **Affiliate** or an **Insured Person** of such **Subsidiary** or **Affiliate** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted during any time when such entity was not a **Subsidiary** or **Affiliate**;

(m) for any actual or alleged breach of any **Independent Contractor Services Agreement** or **Third Party Services Agreement**;

(n) based upon, arising from, or in consequence of any federal, state, or local statutory law or common law anywhere in the world, including but not limited to the Interstate Commerce Act of 1887, the Sherman Antitrust Act of 1890, the Clayton Act of 1914, the Robinson-Patman Act of 1936, the Celler-Kefauver Act of 1950, the Federal Trade Commission Act of 1914, or amendments to or regulations promulgated under any such law, that governs competition, monopolistic practices, or price fixing (including horizontal or other price fixing of wages, hours, salaries, compensation, benefits or any other terms and conditions of employment); or

(o) for any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq., or the Federal False Claims Act or any similar federal, state, or local statutory law or common law anywhere in the world.

5. The Company shall not be liable for that part of **Loss**, other than **Defense Costs**:

(a) which constitutes **Benefits** due or to become due or the equivalent value of such **Benefits**; provided that this Exclusion 5(a) shall not apply to any **Employment Claim** for **Wrongful Termination**;

(b) which constitutes costs associated with providing any accommodation for persons with disabilities or any other status which is protected under any applicable federal, state, or local statutory law or common law anywhere in the world, including but not limited to the Americans With Disabilities Act, the Civil Rights Act of 1964, or amendments to or rules or regulations promulgated under any such law; or

(c) which constitutes costs of compliance with any order for, grant of or agreement to provide non-monetary relief.

6.   The Company shall not be liable for **Loss**, other than **Defense Costs**, resulting from any **Claim** based upon, arising from, or in consequence of any actual or alleged breach of any written employment contract; provided that this Exclusion 6 shall not apply to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract.

### Coordination of Coverage

7.   Any **Loss** otherwise covered by both this Coverage Section and any fiduciary liability coverage section or policy issued by the Company or by any affiliate of the Company first shall be covered as provided in, and shall be subject to the Limit of Liability and Retention applicable to, this Coverage Section.

### Limit of Liability and Retention

8. ·   (a)   The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during each **Policy Year**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability set forth in Item 2(A) of the Declarations for this Coverage Section. If Third Party Liability Coverage is purchased, the Company's maximum aggregate liability for all **Loss** on account of all **Third Party Claims** first made during each **Policy Year** shall be the Sublimit set forth in Item 2(B) of this Coverage Section, which amount shall be part of and not in addition to the Company's maximum aggregate Limit of Liability for all **Claims** first made during that **Policy Year** as set forth in Item 2(A) of the Declarations for this Coverage Section.

(b)   Solely in the event that the Defense Outside the Limits of Liability Option is purchased as indicated in Item 6 of the Declarations of this Coverage Section, **Defense Costs** shall be in addition to, and not part of, the applicable Limits of Liability set forth in Item 2 of the Declarations for this Coverage Section, and payment of **Defense Costs** by the Company shall not reduce or exhaust such applicable Limits of Liability; provided, however, that when such applicable Limits of Liability are exhausted by payment of **Loss** other than **Defense Costs**, any obligation of the Company to pay **Defense Costs** or to defend or continue to defend any **Claim** shall cease.

If the Defense Outside the Limits of Liability Option is not purchased as indicated in Item 6 of the Declarations of this Coverage Section, **Defense Costs** are part of and not in addition to the Limits of Liability set forth in Item 2 of the Declarations of this Coverage Section and payment of **Defense Costs** by the Company shall reduce, and may exhaust, such Limits of Liability. When the Limits of Liability are exhausted by payment of **Defense Costs** or other **Loss**, any obligation of the Company to pay **Defense Costs** or to defend or continue to defend any **Claim** shall cease. ·

(c)   The Company's liability under this Coverage Section shall apply only to that part of covered **Loss** (as determined by any applicable provision in Subsection 10 of this Coverage Section) on account of each **Claim** which is excess of the applicable Retention set forth in Item 3 of the Declarations for this Coverage Section. Such Retention shall be depleted only by **Loss** otherwise covered under this Coverage Section and shall be borne by the **Insureds** uninsured and at their own risk. In the event that any **Insured** is unwilling or unable to bear the Retention it shall be the obligation of the **Organization** to bear such Retention uninsured and at its own risk.

(d)   All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of any **Insured** shall be deemed one **Claim**, regardless of the number of **Claims** made, claimants, or **Insureds** against whom such **Claims** are made. Such **Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Claims** was first made, or on the date the earliest of such **Claims** is treated as having been made in accordance with Subsection 6 of the General Terms and Conditions, regardless of whether such date is before or during the **Policy Period**.



(e)     The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the immediately preceding **Policy Year.**

---

**Defense and Settlement**

9.     (a)     Except as provided in this Subsection 9, the Company shall have the right and duty to defend any **Claim** covered by this Coverage Section, even if any of the allegations in such **Claim** are groundless, false or fraudulent. Defense counsel shall be selected by the Company from the Company's list of approved employment defense firms. The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(b)     Notwithstanding the foregoing, it shall be the duty of the **Insureds** and not the duty of the Company to defend any **Claim** which is in part excluded from coverage pursuant to Exclusion 4(e) of this Coverage Section. For such portion of such **Claim** that is otherwise covered under this Coverage Section, the **Insureds** shall select as defense counsel for such **Claim** a law firm included in the Company's then current list of approved employment defense firms for the jurisdiction in which such **Claim** is pending.

(c)     The Company may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient.

Solely in the event that the Defense Outside the Limits of Liability Option is purchased as indicated in Item 6 of the Declarations of this Coverage Section, if an **Insured** in any **Claim** withholds consent to any settlement acceptable to the claimant in accordance with the Company's recommendation (a "Proposed Settlement"), the **Insureds** will thereafter be responsible for defending such **Claim** at their own expense and, subject in all events to the Company's maximum Limit of Liability, the Company's liability for **Loss** with respect to any such **Claim** will not exceed the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement.

If the Defense Outside the Limits of Liability Option is not purchased as indicated in Item 6 of the Declarations of this Coverage Section, in the event an **Insured** in any **Claim** withholds consent to a Proposed Settlement, the Company's liability with respect to such **Claim** shall not exceed:

(i)     the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement; plus

(ii)    seventy percent (70%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (i) above, incurred in connection with such **Claim**; subject in all events to the applicable Retention and Limits of Liability for such **Claim**. The remaining thirty percent (30%) of **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (i) above shall be borne by the **Insureds** uninsured and at their own risk, notwithstanding anything to the contrary contained in Subsection 10(a) Allocation.

(d)     The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent, which consent shall not be unreasonably withheld. The Company shall not be liable for any element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent.

(e)     The Company will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the maximum Limit of Liability applicable to the **Policy Year** in which such **Claim** was first made or is deemed to have first been made has been exhausted. If

the Company's Limit of Liability in any **Policy Year** is exhausted, the premium applicable to such **Policy Year** will be fully earned.

(f)   If the Combined Maximum Aggregate Limit of Liability for all **Liability Coverage Sections** is elected, as set forth in Item 3 of the Declarations of the General Terms and Conditions, then the Company will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's Combined Maximum Aggregate Limit of Liability applicable to the **Policy Year** in which such **Claim** was first made or is deemed to have first been made has been exhausted. If the Company's Combined Maximum Aggregate Limit of Liability in any **Policy Year** is exhausted, the Policy premium applicable to such **Policy Year** will be fully earned.

(g)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requires and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

### Allocation

10.   If both **Loss** covered under this Coverage Section and loss not covered under this Coverage Section are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters, then coverage under this Coverage Section with respect to such **Claim** shall apply as follows:

(a)   **Defense Costs**: Except as provided in (c) below, one hundred percent (100%) of reasonable and necessary **Defense Costs** incurred by the **Insured** on account of such **Claim** will be considered covered **Loss**; and

(b)   Loss other than **Defense Costs**: All remaining loss incurred by the **Insured** on account of such **Claim** shall be allocated by the Company between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, also based on the relative benefits to the **Insureds** from such settlement.

(c)   Defense costs incurred by the **Insured** on account of a **Claim** which is in part excluded from coverage pursuant to Exclusion 4(e) of this Coverage Section shall be allocated between covered **Defense Costs** and non-covered defense costs based on the relative legal and financial exposures of the parties to covered and non-covered matters.

### Arbitration

11.   Any dispute between any **Insured** and the Company based upon, arising from, or in any way involving any actual or alleged coverage under this Coverage Section, or the validity, termination or breach of this Coverage Section, including but not limited to any dispute sounding in contract or tort, shall be submitted to binding arbitration.

The **Organization**, however, shall first have the option to resolve the dispute by non-binding mediation pursuant to such rules and procedures, and using such mediator, as the parties may agree. If the parties cannot so agree, the mediation shall be administered by the American Arbitration Association pursuant to its then prevailing commercial mediation rules.

If the parties cannot resolve the dispute by non-binding mediation, the parties shall submit the dispute to binding arbitration pursuant to the then prevailing commercial arbitration rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third arbitrator selected by the first two arbitrators.



**Other Insurance**

12.   Unless specifically stated otherwise, the coverage afforded under this Coverage Section:

(a)   for **Employment Claims**, shall be primary; provided that with respect to that portion of an **Employment Claim** made against any leased employee, temporary employee or **Independent Contractor**, **Loss** and **Defense Costs**, payable on behalf of such leased employee, temporary employee or **Independent Contractor** under this Coverage Section will be specifically excess of and will not contribute with other valid insurance, including but not limited to any other insurance under which there is a duty to defend, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is specifically stated to be in excess of this Coverage Section.

(b)   for **Third Party Claims**, will be specifically excess of and will not contribute with other valid insurance, including but not limited to general liability insurance or any other insurance under which there is a duty to defend, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is: (i) specifically stated to be in excess of this Coverage Section; or (ii) subject to Subsection 7 of this Coverage Section.



**CHUBB**

Coverage Section: ForeFront Portfolio for Not-for-Profit Organizations Employment Practices Liability Coverage Section  (Federal)

Effective date of
this endorsement:  March 1, 2007

Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 6802-1737

Issued to:  Screen Actors Guild, Inc.and its Subsidiaries

---

## CALIFORNIA AMENDATORY ENDORSEMENT
## TO THE EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION

In consideration of the premium charged, it is agreed that:

1.  The first parenthetical phrase in the first paragraph of the definition of **"Loss"** set forth in Subsection 3. Definitions of the Employment Practices Liability Coverage Section is amended to read as follows:

    "(including punitive and exemplary damages, liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act, or the multiple portion of any multiplied damage award, if and to the extent that (1) such punitive, exemplary, liquidated or multiple damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, the Company, this Policy or the **Claim** giving rise to the damages, and (2) such **Claim** is brought in a federal or state court other than a California state court)"

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of California.

14-02-10276 (10/2004 ed.)                    Page 1

Ex. A Page 77



**CHUBB**

**ENDORSEMENT**

Coverage Section: ForeFront Portfolio for Not-for-Profit Organizations Employment Practices Liability Coverage Section  (Federal)

Effective date of
this endorsement: March 1, 2007          Company:  Federal Insurance Company

                                         Endorsement No. 2

                                         To be attached to and
                                         form a part of Policy No. 6802-1737

Issued to:  Screen Actors Guild, Inc.and its Subsidiaries

## SPECIFIC ENTITY EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that no coverage will be available under this Coverage Section for **Loss** on account of any **Claim**:

(a)     made against, or brought or maintained by or on behalf of:

     (i)     Screen Actors Guild Pension and Benefit Plan;

     (ii)    any subsidiary of Screen Actors Guild Pension and Benefit Plan; or

     (iii)   any past, present or future director, officer, trustee, duly constituted committee member, employee, volunteer or shareholder of (A) Screen Actors Guild Pension and Benefit Plan or of (B) any subsidiary of Screen Actors Guild Pension and Benefit Plan; or

(b)     based upon, arising from, or in consequence of any **Wrongful Act** committed, attempted, or allegedly committed or attempted by:

     (i)     Screen Actors Guild Pension and Benefit Plan;

     (ii)    any subsidiary of Screen Actors Guild Pension and Benefit Plan; or

     (iii)   any past, present or future director, officer, trustee, duly constituted committee member, employee or volunteer of (A) Screen Actors Guild Pension and Benefit Plan or of (B) any subsidiary of Screen Actors Guild Pension and Benefit Plan.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

14-02-10440 (11/2004)               Page 1


**CHUBB**

Coverage Section: ForeFront Portfolio for Not-for-Profit Organizations Employment Practices Liability Coverage Section  (Federal)

Effective date of
this endorsement/rider: March 1, 2007

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 6802-1737

Issued to:  Screen Actors Guild, Inc.and its Subsidiaries

---

### CLAIM REPORTING INCENTIVE FOR EMPLOYMENT PRACTICES LIABILITY ONLY ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to the Employment Practices Liability Coverage Section, the following shall apply:

(1)     If the Company receives written notice of a **Claim** from the **Insureds** in accordance with Section 6. Reporting and Notice of the General Terms and Conditions Section no later than fifteen (15) business days after such **Claim** is first made, then the Retention amount applicable to such **Claim** shall be reduced by ten percent (10%). If the Company does not receive such written notice within fifteen (15) business days after such **Claim** is first made, the terms, limitations, conditions, exclusions and provisions of this coverage section and the General Terms and Conditions Section shall remain unchanged.

(2)     With respect to the foregoing paragraph, notice to the broker or agent shall not constitute notice to the Company.

(3)     Solely for purposes of the foregoing paragraph, a **Claim** is deemed to be "first made" at the earliest occurrence of any of the following:

        (i)      the date of the written demand letter;
        (ii)     the date of the demand for arbitration;
        (iii)    the date of issuance of the notice of charges or the formal investigative order;
        (iv)     the date the Insured receives the service of summons with respect to a civil proceeding/lawsuit; or
        (v)      the date of the indictment or information document with respect to a criminal proceeding outside the U.S.

(4)     The foregoing shall not apply to any **Potential Employment Claims** or **Potential Third Party Claims**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

14-02-12177 (07/2006)                     Page 1



**CHUBB**

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio for Not-for-Profit Organizations Employment Practices Liability Coverage Section (Federal)

Effective date of
this endorsement/rider: March 1, 2007                    Federal Insurance Company

                                                        Endorsement/Rider No. 4

                                                        To be attached to and
                                                        form a part of Policy No. 6802-1737

Issued to: Screen Actors Guild, Inc.and its Subsidiaries

---

### LABOR NEGOTIATION EXCLUSION

In consideration of the premium charged, it is agreed that in addition to, and not in limitation of, Exclusion 4(g) of this Coverage Section, no coverage will be available under this Coverage Section for **Loss** on account of any **Claim** based upon, arising from, or in consequence of:

(a)     any lockout, strike, picket line, hiring of replacement workers, collective bargaining, mediation, arbitration or other similar actions in connection with labor disputes or labor negotiations; or

(b)     any collectively bargained or negotiated labor agreement.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

Q06-782 (04/2006)                    Page 1

 **CT Corporation**

**Service of Process Transmittal**
07/29/2011
CT Log Number 518914194

**TO:** James Lalor, Field Claim Manager
Federal Insurance Company
555 South Flower Street, 4th Floor
Los Angeles, CA 90071

**RE:** **Process Served in California**

**FOR:** Federal Insurance Company (Domestic State: IN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Screen Actors Guild, Inc., Pltf. vs. Federal Insurance Company, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Notice(s), Attachment(s), Cover Sheet, Addendum and Statement, Stipulation Form(s), Informal Discovery Conference, Complaint |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Hill Street, CA<br>Case # BC466014 |
| **NATURE OF ACTION:** | Breach of Contract - Defendant breached the Federal Policy by failing and refusing, and continuing to fail and refuse to pay the $330,000 loss to SAG |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/29/2011 at 16:11 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Steven Brower<br>Buchalter Nemer<br>18400 Von Karman Avenue<br>Suite 800<br>Irvine, CA 92612-0514<br>949-760-1121 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/01/2011, Expected Purge Date: 08/06/2011<br>Image SOP<br>Email Notification, James Lalor jlalor@chubb.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Nancy Flores<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Ex A. Page 81

EXHIBIT B



# IN.gov

**Indiana Secretary of State**
## Charlie White

*Name Searched On:*
**FEDERAL INSURANCE COMPANY (Legal)**

### Current Information

*Entity Legal Name:*
**FEDERAL INSURANCE COMPANY**

*Entity Address:*
**251 North Illinois Suite 1100, INDPLS, IN 46204**

*General Entity Information:*

Control Number: **1990030429**
Status: **Active**
Entity Type: **Domestic Insurance Corporation**

Entity Creation Date: **3/7/1990**
Entity Date to Expire:
Entity Inactive Date:
**This entity is current with Business Entity Report(s).**

**There are no other names on file for this Entity.**

*Registered Agent(name, address, city , state , zip):*
**CT Corporation System**
**251 E. Ohio Street Suite 1100**
**Indianapolis , IN  46204**

*Principals(name, address, city, state, zip - when provided)*
**Dean Raymond O' Hare**
**President**
**15 Mountain View Road**
**WARREN , NJ  07061**

**Henry G. Gulick**
**Secretary**

*Transactions:*

| Date Filed | Effective Date | Type |
|---|---|---|
| 03/07/1990 | 03/07/1990 | Articles of Incorporation |
| 04/02/1991 | 04/02/1991 | Miscellaneous |
| 03/31/1993 | 03/31/1993 | Miscellaneous |
| 03/29/1994 | 03/29/1994 | Miscellaneous |
| 03/28/1995 | 03/28/1995 | Miscellaneous |
| 03/25/1996 | 03/25/1996 | Miscellaneous |
| 03/30/1998 | 03/30/1998 | Miscellaneous |
| 11/09/1999 | 11/09/1999 | Articles of Amendment |
| 11/09/1999 | 11/09/1999 | Amended and Restated Articles |
| 09/04/2000 | 09/04/2000 | Notice of Change of Registered Office or Registered Agent |
| 07/06/2004 | 07/02/2004 | Notice of Change of Registered Office or Registered Agent |

*Corporate Reports:*
**Years Paid**
N/A



IN.gov                              Indiana Secretary of State
                                    Charlie White

**Corporate Reports:**
**Years Paid**
N/A


**Years Due**
None


**Additional Services Available:**

 GO   Generate an official Certificate of Existence/Authorization.
          There is a fee of 20.00 for *IN.gov* subscribers and a fee of $21.42 for credit
          card users. <u>Example Certificate</u>


[NEW SEARCH]

*All the entity information captured by the Indiana Secretary of State, pursuant to law, is displayed on*
*the Internet. For further information, please call our office at 317-232-6576. Copies of actual*
*corporate documents can also be <u>downloaded online</u>.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV11- 7123 DMG (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Screen Actors Guild

**DEFENDANTS**
Federal Insurance Company

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Steven Brower (SBN 93568)
BUCHALTER NEMER
18400 Von Karman Avenue, Suite 800, Irvine, California 92612

Attorneys (If Known)

Michael G. Nardi (SBN 126902)
Andrea N. Myers (SBN 259401)
SELTZER CAPLAN McMAHON VITEK
750 B Street, Suite 2100, San Diego California 92122

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in this State | ☒4 | ☐4 |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☒ **MONEY DEMANDED IN COMPLAINT:** $ Exceeds $330,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332, 28 U.S.C. 1441(b)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV11-07123

FOR OFFICE USE ONLY:  Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)     CIVIL COVER SHEET     Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
   ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX.  VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Indiana, state of incorporation<br>New Jersey, principal place of business |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date   August 29, 2011

   **Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |